## UNIVERSITY v. PEOPLE.

A statute of Illinois, passed in 1855, declares that all the property of the Northwestern University sh..ll be for ever free from taxation. As construed by the assessors and by the Supreme Court of the State, a statute of 1872, conforming taxation to the new constitution of 1870, limited this exemption to land and other property in immediate use by the institution. *Held*, 1. That the latter statute impaired the obligation of the contract of exemption found in the statute of 1855. 2. That whether the statute of 1855 is a valid contract, or is void by reason of its conflicting with the State Constitution of 1848, under which it was made, is a question on which the judgment of that court can be reviewed here. 3. That the lots, lands, and other property of the university, the annual profits of which, by way of rent or otherwise, are devoted to the purposes of the institution as a school, could, within the meaning of that Constitution, be exempted by statute from taxation, and that the exempting power of the legislature was not limited to real estate occupied or in immediate use by the university.

ERROR to the Supreme Court of the State of Illinois.

At the June Term, 1875, of the County Court of Cook County, Illinois, application, in the manner prescribed by the revenue law of the State, was made by the county collector, for a judgment against lands in that county, delinquent for the taxes levied and assessed upon them for the year 1874, for State, county, town, school, and municipal corporation purposes. In the list were embraced some four hundred and twenty-seven distinct parcels belonging to the Northwestern University.

Pending this application, the University appeared and filed

its objections to judgment being entered against these parcels, and to their sale for delinquent taxes; alleging that, by an act of the legislature of Illinois, approved Jan. 25, 1851, it was created a corporation, and that by an amendment to its charter, made Feb. 14, 1855, all its property of whatever kind or description was declared to be for ever free from taxation for any and all purposes whatever; that by the terms of the charter and amendment the State contracted with it that from and after the passage of the amendment all its property of whatever kind and description should be for ever free from taxation for any and all purposes; that the charter and amendment had been accepted by it and were still in force; and that the taxes complained of had been levied without its assent and in violation of the charter and amendment.

At the trial, it having been admitted that the proper notice and return of the delinquent list had been made as required by law, the collector rested. The university thereupon offered in evidence a stipulation of counsel, that at the time and before the taxes were assessed and levied the parcels enumerated in the objections belonged to, and still belong to, the university, and are leased by it to different parties for a longer or a shorter period, and that all of the parcels are held for sale or lease, for its use and support, and for the objects contemplated in its charter; that the lands which are occupied by buildings or other direct appliances of education are not taxed or included in such parcels; that since the passage of the charter and amendment, the corporation has expended in the erection and purchase of buildings, apparatus, and other facilities and appliances for education, and for the promotion of the objects stated in the charter, over $200,000, realized from donations and the sale of lots and lands, and has built up a university with several departments, in which more than five hundred students are taught the higher branches of learning.

The charter was also offered in evidence. The first section constitutes certain individuals therein named a body corporate under the name of " Trustees of the Northwestern University, with succession, and with power to acquire, hold, and convey real and personal property, and to make by-laws for the government of the institution,". &c. The second section regulates

the term of office of the trustees, and requires the board of trustees to hold the property of the institution for the purposes of education, and not as stock for their individual benefit.

The fourth section locates the institution in or near Chicago, and gives the corporators power in their corporate name to take property by gift, grant, conveyance, or devise, and to grant, sell, devise, let, place out at interest, or otherwise dispose of the same for the use of the institution, and to apply the funds collected or the proceeds of the property to erecting buildings, supporting the teachers, officers, and servants of the institution, and procuring books and apparatus. It restricts the amount of land the corporation can hold to two thousand acres, unless it receives the same by gift, grant, or devise.

An amendment to the act of incorporation was approved Feb. 14, 1855. Its third section authorizes the corporation to take, use, lease, and dispose of property coming to the corporation charged with any trust, and to execute the trusts confided to it. Its fourth section is as follows: "That all property, of whatever kind or description, belonging to or owned by the corporation, shall be for ever free from taxation." The fifth section declares the act to be public, and that it shall take effect from its passage.

Another amendment, in force Feb. 19, 1867, changing the name of the corporation to "Northwestern University," authorized it by the latter name to exercise the powers and immunities conferred on it, and making other changes in the number of the board of trustees.

The objections were overruled, and, July 14, 1875, judgment was entered for the delinquent taxes against the lands of the university.

That judgment having been affirmed by the Supreme Court, the corporation sued out this writ of error.

So far as they bear upon this case, the provisions of the Constitution of Illinois of 1848, which was in force when the charter and its amendments were enacted; those of the Constitution of 1870, and of the act of 1872, under which the tax was sought to be collected, — are set forth in the opinion of the court.

The assignment of errors is as follows : —

The Supreme Court erred in adjudging: *First*, That no valid contract existed between the State and the plaintiff in error by virtue of the amended charter granted to and accepted by it, whereby it was protected by the Constitution of the United States from the taxation complained of. *Second*, That the provision of the amended charter exempting the property of the plaintiff in error from taxation was in conflict with the Constitution of the State, and void. *Third*, That the parcels of land described in these proceedings were subject to taxation for State, county, and other purposes for the year 1874, under the Constitution and laws of the State, notwithstanding their exemption by the amended charter.

*Mr. Matt. H. Carpenter* and *Mr. Wirt Dexter* for the plaintiff in error.

It is well settled that, to confer jurisdiction here to review the decision of a State court, it is not necessary that the record should show *in ipsissimis verbis* that a Federal question was presented, or that the pleadings in the case should either refer to the particular clause in the Federal Constitution relied upon, or set out the general law of the State which is alleged to be in violation of that Constitution. *Furman* v. *Nichol*, 8 Wall. 44; *Murray* v. *Charleston*, 96 U. S. 432, and cases cited; *Murdock* v. *City of Memphis*, 20 Wall. 5℉0.

The question of the invalidity of a State statute and of the authority exercised thereunder, on the ground of their repugnancy to the Constitution, was directly raised and presented below. The Federal right claimed by and decided adversely to the plaintiff was necessarily involved in the judgment rendered. The jurisdiction of this court is therefore clearly established. *Home of the Friendless* v. *Rouse*, 8 Wall. 430; *Parmelee* v. *Lawrence*, 11 id. 36; *McManus* v. *O'Sullivan et al.*, 91 U. S. 578; *Bolling* v. *Lersner*, id. 594.

This court has enforced the obligations of similar contracts of exemption. *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436; *State Bank of Ohio* v. *Knoop*, 16 How. 369; *Wilmington Railroad* v. *Reid*, 13 Wall. 264; *Humphrey* v. *Pegnes*, 16 id. 244; *Pacific Railroad Co.* v. *Maguire*, 20 id. 36; *The Washington University* v. *Rouse*, 8 id. 439; *Home of the Friendless* v. *Rouse*, *supra*.

The enforced collection of this tax is in violation of the contract, if there was one, between the State and the plaintiff in error; and the sole question, therefore, is as to the existence of such a contract. The decision of it requires this court to determine, not only whether the amended charter exempting the institution from taxation is in its terms a contract, but also whether the legislature had the power to grant it.

The decision of a State court, holding that as a matter of construction a particular charter does not constitute a contract, is not binding on this court. The question of construction is an original one to be determined here. *Jefferson Branch Bank* v. *Skelly, supra; Bridge Proprietors* v. *Hoboken Company*, 1 Wall. 117; *Butz* v. *City of Muscatine*, 8 id. 575; *State Bank of Ohio* v. *Knoop, supra; Delmas* v. *Insurance Company*, 14 Wall. 661.

In regard to the exemption of such property as might be deemed necessary for school purposes the Constitution conferred discretion upon the legislature, and the judgment of the latter exercised in making the exemption under consideration is not subject to judicial review. Cooley, Const. Lim. 168, 173; *Luther* v. *Borden et al.*, 7 How. 1; *Bank of Rome* v. *Rome*, 18 N. Y. 42; *People* v. *Mahoney*, 13 Mich. 400; *Wynehamer* v. *People*, 13 N. Y. 429; *People* v. *Draper*, 15 id. 532; *Commonwealth* v. *Hartman*, 17 Pa. St. 119; *Sharpless* v. *Mayor of Philadelphia*, 21 id. 147.

It is a rule of universal application, that a proper respect for a co-ordinate branch of the government requires that a court must be convinced beyond a reasonable doubt before it will declare a law unconstitutional. *Fletcher* v. *Peck*, 6 Cranch, 128; *Ogden* v. *Saunders*, 12 Wheat. 213. The rule is the same whether the question involves the construction of a law or of the Constitution itself. Cooley, Const. Lim. 184, and cases cited; *Twitchell* v. *Blodgett*, 13 Mich. 162; *Martin* v. *Mott*, 12 Wheat. 19; *Masier* v. *Hilton*, 15 Barb. (N. Y.) 657; *State* v. *County Court of Boone County*, 50 Mo. 317; *Carpenter* v. *Montgomery*, 7 Blackf. (Ind.) 415; *Franklin* v. *State Board of Examiners*, 23 Cal. 173.

In any view, the exemption under consideration was clearly

for school purposes, and should be sustained as a proper exercise of the legislative power.

Such an institution as this university coming into life, without direct donations from the State itself, must have something more than the mere land on which the building stands. There must be a source of revenue which will support its professors, and keep the institution alive. The one is as much a necessity of its success, even of its existence, as the other; and the distinction, that the grounds and buildings thereon and furniture therein are clearly for "school purposes," while property used to erect more buildings, as necessity may require, and buy more furniture and pay teachers, is not for " school purposes," is one without reason, and is an unworthy foundation for an argument with which to sweep away a contract which reposes upon the faith of a great State, and has been confirmed by twenty years of practical acquiescence.

It is a construction which has heretofore received no support from the Supreme Court of Illinois. *Taylor* v. *Thompson*, 42 Ill. 9 ; *Burr* v. *City of Carbondale*, 76 id. 455.

The correctness of the view sustaining the power to make the exemption is conclusively determined by the contemporaneous and practical construction given by the legislative and executive departments of the government of Illinois, and sanctioned by the long acquiescence of her people.

The principle of contemporaneous and practical construction is expressed in some of the oldest maxims of the law : " *Contemporanea expositio est fortissima in lege ;*" " *Optima est legis interpres consuetudo ;* " "*A communi observantia non est recedendum.*" This court has frequently recognized and applied the doctrine in construing the Federal Constitution and the laws of Congress. *Stuart* v. *Laird*, 1 Cranch, 299 ; *Ogden* v. *Saunders*, *supra ; Prigg* v. *Pennsylvania*, 16 Pet. 539 ; *Dred Scott* v. *Sandford*, 19 How. 393. It has been illustrated and enforced by the decisions of the ablest State courts. *Rogers* v. *Goodwin*, 2 Mass. 477 ; *Boyden* v. *Town of Brookline*, 8 Vt. 284 ; *Ramsey* v. *The People*, 19 N. Y. 41 ; *Cronise* v. *Cronise*, 54 Pa. St. 255 ; *People* v. *Maynard*, 15 Mich. 463 ; *Scanlan* v. *Childs*, 33 Wis. 663 ; *Johnson* v. *Joliet & Chicago Railroad Co.*, 23 Ill. 202.

The grave errors in the opinion of the learned court below in this case destroy its weight as an authority.

We deny that any case arising on the construction of a statute giving exemption from taxation can be " pertinent " to the construction of a clause in a constitution limiting a legislative power, or that a clause in a statute conferring exemption on an individual, and a clause in a constitution defining or limiting the legislative power to make exemption, can be " like clauses."

But aside from the inherent and marked difference between the cases cited by that court and the case at bar in this particular, it will be found that in all of them there were limiting or qualifying words not found in the clause under consideration, which were the basis of the conclusion of the court.

*Mr. James K. Edsall*, Attorney-General of Illinois, and *Mr. Consider H. Willett*, contra.

I. The State has passed no subsequent law repealing or impairing any of the provisions or obligations of the amendment to the charter under which the exemption from taxation is claimed.

1. The revenue law passed in 1872 is a mere revision of that of 1853, and makes no substantial change therein, so far as respects the question of the exemption of property from taxation. Session Laws of 1853, p. 3, sects. 1, 3 ; Gross, Statutes of Ill. (ed. of 1869), p. 580, sects. 45, 47, with the corresponding provisions found in Rev. Stat. of Ill. (of 1874), p. 857, sects. 1, 2.

2. The revenue law of 1872 does not assume to amend or repeal any exemption contained in special charters of private corporations. Nor can it be construed as having that effect, without violating the established rules of construction. A subsequent law, which is general, does not operate as a repeal of a special law upon the same subject, without express words declaring an intention to repeal. *Town of Ottawa* v. *County of La Sálle*, 12 Ill. 339 ; *Covington* v. *East St. Louis*, 78 id. 549 ; *Board of Supervisors* v. *Campbell*, 42 id. 490 ; *Tyson* v. *Postlethwaite*, 13 id. 727 ; *Blain* v. *Baily*, 25 Ind. 165 ; *State* v. *Newark*, 2 Dutch. (N. Y.) 519 ; Sedgwick, Stat. and Const. Law (2d ed.), p. 97.

3. In this revision the legislature left all prior special acts

purporting to exempt property of particular corporations from taxation as it found them, and did not attempt to amend or repeal any such acts. If the exemptions claimed were originally void and ineffectual, the general provisions of both the former and present revenue laws of the State prescribing the remedy to enforce the collection of taxes apply to such corporations as well as to all others having property subject to taxation, but otherwise not.

4. The State may lawfully change the remedy for the enforcement of the rights under pre-existing contracts, so long as no substantial right secured by the contract is impaired. *Bank of the State of Alabama* v. *Dalton*, 9 How. 522; *Sampeyreac & Stewart* v. *United States*, 7 Pet. 222. The enactment of laws so changing the remedy as to rights under past contracts cannot be justly regarded as impairing the obligation of such contracts.

5. Cases cited by counsel for plaintiff in error, where there was an actual attempt by subsequent legislation, or the adoption of a new constitution, to amend or repeal former special charters, are inapplicable to the case presented by this record.[f] For example, *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436; *Home of the Friendless* v. *Rouse*, 8 Wall. 430; *The Washington University* v. *Rouse*, id. 439; *State Bank of Ohio* v. *Knoop*, 16 How. 369; *Wilmington Railroad* v. *Reid*, 13 Wall. 264; *Pacific Railroad Co.* v. *Maguire*, 20 id. 36; *Delmas* v. *Insurance Company*, 14 id. 661.

So, also, as to cases brought here upon writ of error to the Federal courts, like *Chicago* v. *Sheldon*, 9 Wall. 50; *Humphrey* v. *Peques*, 16 id. 244.

II. This court will not entertain jurisdiction of a case from a State court, merely because the judgment of that court impairs or fails to give effect to a contract.

1. In order to confer jurisdiction upon that ground, there must have been some law of the State, subsequently enacted, which impaired the obligation of the contract; and the validity of such law must have been sustained in the State court against this constitutional objection. *Railroad Company* v. *Rock*, 4 Wall. 177; *Knox* v. *Exchange Bank*, 12 id. 379; *Railroad Company* v. *McClure*, 10 id. 511.

2. The Federal question, if any exists, must be disclosed by the record and proceedings as sent here from the State court, otherwise jurisdiction will not be entertained. *Warfield* v. *Chaffe et al.*, 91 U. S. 690; *Murray* v. *Charleston*, 96 id. 432; *Moore* v. *Mississippi*, 21 Wall. 636; *Smith* v. *Adsit*, 23 id. 368; *Parmelee* v. *Lawrence*, 11 id. 36; *Murdock* v. *City of Memphis*, 20 id. 590.

While it is not essential to confer jurisdiction that the record proper should in express terms show that a Federal question was raised and decided in the State court, yet the fact must exist; and it must be made to appear that such a question was necessarily involved in the decision.

In this case it neither appears from the record, nor otherwise, that the decision of the State court was based upon, or in any manner affected by, any law of the State passed subsequently to the making of the supposed contract, or that any such claim was ever made in that court by counsel on either side.

3. The State court correctly held that, under the Constitution of 1848, the General Assembly could not exempt from taxation the property of colleges not necessary for "school purposes." The express mandate of art. 9, sect. 2, of the State Constitution was, that "the General Assembly shall provide for levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or her property." Rev. Stat. of Ill. of 1874, p. 52. All municipal taxes are required "to be uniform in respect to persons and property within the jurisdiction of the body imposing the same." These provisions have ever been regarded by the Supreme Court of Illinois as limitations upon the power of the General Assembly, and, standing by themselves, would have prohibited all exemptions. *O'Kane* v. *Treat*, 25 Ill. 557, 561; *Trustees* v. *McConnell*, 12 id. 138; *City of Chicago* v. *Larned*, 34 id. 203; *City of Ottawa* v. *Spencer*, 40 id. 211; *The People* v. *Barger*, 62 id. 452.

But to obviate this result, the framers of the Constitution introduced into the same article a section defining what property the General Assembly might exempt from taxation, as follows: —

"SECT. 3. The property of the State and counties, both real and personal, and such other property as the General Assembly may deem necessary for school, religious, and charitable purposes, may be exempted from taxation." Rev. Stat. of Ill. (of 1874), p. 52.

The General Assembly had no power to grant exemptions, except so far as authorized by this section; and as to educational, religious, and charitable corporations, the courts of the State have uniformly held that the power was confined to such property as was used directly for the purposes for which the corporations were created, and that it did not extend to property leased for other uses, or held for profit merely, although the rents and profits were applied to the proper purposes of the corporation. *Northwestern University* v. *The People*, 80 Ill. 333; *First Methodist Episcopal Church* v. *Chicago*, 26 id. 482; *Illinois Central Railroad Co.* v. *Irwin*, 72 id. 452.

In these rulings the Supreme Court of Illinois has followed the general current of authority upon analogous questions. *Pierce* v. *Inhabitants of Cambridge*, 2 Cush. (Mass.) 611; *Cincinnati College* v. *The State*, 19 Ohio, 110; *Washburne College* v. *Commissioners of Shawnee County*, 8 Kan. 344; *Kendrick* v. *Farquhar*, 8 Ohio, 197; *Orr* v. *Baker*, 4 Ind. 86; *Trustees of Methodist Episcopal Church* v. *Ellis*, 38 Ind. 3; *State* v. *Newark*, 2 Dutch. (N. J.) 519; *State* v. *Flavel & Fredericks*, 4 Zab. (N. J.) 370; *State* v. *Commissioners of Mansfield*, 3 id. 510; *Railroad* v. *Berks County*, 6 Pa. St. 670; *Wyman* v. *City of St. Louis*, 17 Mo. 335; *Proprietors of Meeting-House in Lowell* v. *City of Lowell*, 1 Metc. (Mass.) 538.

While it is now authoritatively settled that it is within the competency of a State legislature, possessing unrestrained legislative power, to enter into a valid contract exempting property from taxation, it is equally clear that the people of a State may, by constitutional provisions, limit the power of the legislature in this regard.

The Constitution of 1848 did impose such limitations upon the General Assembly of Illinois.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Supreme Court of Illinois, bringing before us a judgment of that court, deciding that

certain property of the plaintiff was liable to taxation, which was resisted, on the ground that it was exempt by a legislative contract.

The university was incorporated by an act of the legislature of the State of Illinois, approved Jan. 28, 1851, which contained the powers necessary to its usefulness as an institution of learning, and, among other provisions, authorized it to purchase and hold real estate to the extent of two thousand acres of land, and receive gifts and devises of land above that amount, which must be sold within ten years. In 1855, the legislature, by an amendment to this charter, appointed three additional trustees, and enlarged its powers, in some respects not very important. But the fourth section of that act is the one supposed to contain the contract on which this case must be decided. It was this: " That all property, of whatever kind or description, belonging to or owned by said corporation, shall be for ever free from taxation for any and all purposes."

The State Constitution of 1848, in force when the charter and amended charter above cited were enacted, declares that " the property of the State and counties, both real and personal, and such other property as the General Assembly may deem necessary for school, religious, and charitable purposes, may be exempt from taxation."

The record shows a very large list of lots and lands in Cook County which the plaintiff asserted to be free from taxation under this law, but which were listed for taxes of the year 1874, and about to be sold for their non-payment. By proper judicial proceedings the question arose before the Supreme Court of the State, which held that they were liable to be so taxed.

A motion was made some time before the case was reached for argument in this court, to dismiss it for want of jurisdiction, and was overruled; but the attorney-general of Illinois renews the objection now in connection with the main argument.

This question of jurisdiction to review the judgments of State courts is so frequent, and the principles which govern it so well settled, that we need not be very elaborate in our opinion on that point. The argument is that the judgment of the State court is limited to a construction of the fourth clause of the amendatory charter of 1855, as it is affected by the consti-

tution under which it was enacted, and that whether that statute was a contract or not, or whether it was properly construed or not, it is still but the decision of a court construing a contract or a statute, and there is no law of the State impairing the obligation of that contract, within the meaning of the Constitution of the United States.

If this were true in point of fact, the conclusion would be sound, as we have repeatedly held in this court. *Railroad Company* v. *Rock*, 4 Wall. 177; *Railroad Company* v. *McClure*, 10 id. 511; *Knox* v. *Exchange Bank*, 12 id. 379.

But the premises assumed are not justified by the facts. The general revenue law of Illinois, prior to the amendment of 1855 to plaintiff's charter, contained nothing which exempted its property from taxation. When that act was passed, it became a part of the law of the State governing taxation as applicable to the property of the university. The law remained in this condition until the State adopted a new constitution, in 1870, the part of which relating to this subject is in these words: —

"The property of the State, counties, and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery, and charitable purposes, may be exempted from taxation; but such exemption shall be only by general law."

In order to conform the law of the State on the subject of taxation to this provision of the new constitution, the legislature revised its revenue laws in 1872, and in this statute the exemption established was: —

"*First*, All lands donated by the United States for school purposes, not sold or leased. All public school houses. All property of institutions of learning, including the real estate on which the institutions are located, not leased by such institutions or otherwise used with a view to profit.

"*Second*, All church property actually and exclusively used for public worship, when the land (to be of reasonable size for the location of the church building) is owned by the congregation."

It was under this law the local officers proceeded in assessing plaintiff's land for taxation, and it was their construction of the

law which was sustained by the Supreme Court. If, therefore, the legislation of 1855 was a contract which exempted the property in question from taxation, and by the law of 1872, as construed by the Supreme Court, it is held liable to taxation, it is manifest that it is the law of 1872 and the Constitution of 1870 which impairs the obligation of that contract, however the court, by an erroneous construction of that contract, may be led to hold otherwise. It is strenuously insisted that these provisions of the Constitution of 1870 and the revenue law of 1872 do not repeal the exemption as established by the fourth section of the amended charter of 1855, because that section was in excess of the authority conferred by the Constitution of 1848. But this depends on the construction of that contract as affected by the constitution under which it was enacted. If by virtue of that constitution the legislature of that day could only exempt plaintiff's real estate so far as it was in immediate use for school purposes, as was held by the Supreme Court, then it may not repeal that statute or impair that contract, for the exemption will probably amount to the same thing under either statute. But if it is a contract, as is contended for by plaintiff's counsel, which, under a true construction of the Constitution of 1848, exempts all the property of plaintiff which is held by it for appropriation to the purposes of the university as a school, as an institution for teaching, and which is held for no other purpose whatever, and which can as effectually promote the purpose by leases, of which the rent goes to support the school, as in any other way, then the law of 1872 and the Constitution of 1870 do, to the extent of the difference arising from these two constructions, impair the obligation of the contract of 1855:

Whether that contract is such as to be impaired by these later laws is one of the questions of which this court always has jurisdiction. *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436; *Bridge Proprietors* v. *Hoboken*, 1 Wall. 144; *Delmas* v. *Insurance Company*, 14 id. 668.

The Supreme Court of Illinois, in its opinion found in the record, appears to concede that the act of 1855, to the extent that it was authorized by the State Constitution, was a contract. "It is not claimed," says the court, "that appellant is in any

sense a public corporation, but it is claimed that the purpose for which it is created is so far beneficial to the public that it affords a sufficient consideration for the grant of exemption from taxation in the amendment, and that when the amendment was accepted and acted on by the corporation it must be held a vested right which cannot be withdrawn by subsequent legislation, because of the provision of the United States which prohibits a State from passing a law impairing the obligation of a contract. If it was competent for the General Assembly to make the exemption, we are not disposed to contest the correctness of their position; but if it was not competent to make the exemption, the attempt was a nullity, and the case is not affected by the Constitution of the United States."

The court thus concedes that there was a contract so far as the legislative power extended.

It is possible, if that question had been fully investigated, and all the facts necessary to decide it were before the court, it might not appear that all the lands subjected to taxation by the judgment of the Supreme Court were bought after the date of the amended charter, or donated on the faith of that exemption.

But it does appear, by a stipulation made for that purpose, that since the granting of said amended charter the corporation "has expended, in the erection and purchase of buildings, apparatus, and other facilities and appliances for education, and for the promotion of the objects stated in and contemplated by the act of incorporation, over $200,000, realized from donations and the sale of lots and lands, and has built up a university, with several departments of learning, in which more than five hundred students are taught the higher branches of learning."

It is, perhaps, a fair inference from this statement, and in deference to the holding of the Supreme Court, that there was such acceptance of this act of 1855, and such investments made on the faith of it, that at least some portion of the property now in question is protected by contract, if the exemption clause lawfully covers it.

It will readily be conceded that the language of the fourth section of the act of 1855 is broad enough for that purpose: "All property, of whatever kind or description, belonging to

or owned by said corporation, shall be for ever free from taxation for any and all purposes." But the argument is, that since the constitution then in force only permitted the legislature to exempt from taxation the property, real and personal, used by the university, in immediate connection with its function of teaching, the statute must be limited to property so used. This was the view taken by the Supreme Court of the State. " By the language of the Constitution," says the court, " while a discretion is conferred on the General Assembly whether to exempt or not, and if it shall determine to exempt, the amount of the exemption, it is clearly restricted in the exercise of this discrétion to property for schools and religious and charitable purposes; property for such purposes, in the primary and ordinary acceptation of the term, is property which in itself is adapted to and intended to be used as an instrumentality in aid of such purposes. It is the direct and immediate use, and not the remote or consequential benefit to be derived through the means of the property that is contemplated."

Though the court is here construing the Constitution of its own State, and is, therefore, entitled to our consideration on that ground, as well as for its character and standing for learning and ability, we find ourselves, in the performance of the duty of reviewing this case, compelled to differ with that court in the nature and extent of the constitutional limitation of this contract, as made by the legislature of the same State. For this constitution necessarily becomes a part of the contract which is said to be impaired by subsequent legislation.

The first observation we have to make is that the Constitution does not say " property used for schools," as the opinion of the court implies. Neither the important word *use* or *schools* is found in the section of the instrument on that subject. If the language were that the legislature might " exempt property for the use of schools," we should readily agree with that court. Indeed, that would be the appropriate language to convey the idea on which the court rests its decision.

The makers of the Constitution, however, used other language because they had another meaning, and did not use that because they did not mean that. They said that the legis-

lature might exempt from taxation "such property as they might deem necessary" (not for the use of schools, but) "for school purposes." The distinction is, we think, very broad between property contributing to the purposes of a school, made to aid in the education of persons in that school, and that which is directly or immediately subjected to use in the school. The purposes of the school and the school are not identical. The purpose of a college or university is to give youth an education. The money which comes from the sale or rent of land dedicated to that object aids this purpose. Land so held and leased is held for school purposes, in the fullest and clearest sense.

A devise of a hundred acres of land " to the president of the university, for the purposes of the school," would be not only a valid conveyance, but, if the president failed to do so, a court of chancery would compel him to execute the trust; but if he leased it all for fair rent and paid the proceeds into the treasury of the corporation to aid in the support of the school, he would be executing the trust.

When the Constitution, in 1870, came to be reconstructed, its framers had learned something about exemption from taxation, as we shall see by placing the provision in that constitution alongside that of 1848 on the same subject : —

| 1848. | 1870. |
|---|---|
| " The property of the State and counties, both real and personal, and such other property as the General Assembly may deem necessary for school, religious, and charitable purposes, may be exempt from taxation." | " The property of the State, counties, and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery, and charitable purposes, may be exempted from taxation; but such exemption shall be only by general law. ' |

Here it is only such property as may be exclusively used for school purposes that may be exempted, and this only by a general law.

The general law passed in 1872 to give effect to the change in the Constitution exempted only " the real estate on which the institutions of learning are located, not leased by such institutions or otherwise used with a view to profit." This is

what the Supreme Court says was meant by the Constitution of 1848; but if it was, it took a deal of change in the language when the framers of the new constitution and of the new tax law came to express the same idea. We cannot come to the conclusion that they were intended to mean the same, but that the later law was designed to limit the more enlarged power of the earlier one.

If our construction of the Constitution of 1848 is sound, the judgment of the Supreme Court must be reversed; for the stipulation of facts on which the case was tried says that "it is admitted that all the lots and lands mentioned and described in the objections filed in said proceeding for judgment, whereon said taxes are levied, excepting improvements on the same, are leased by said university to different parties for a longer or shorter period, and that all said lots and lands are held for sale or lease, for the use and support of said institution and the objects contemplated by said charter."

We are of opinion that such use and such holding bring the lots within the class of property which by the Constitution of 1848 the legislature could, if it deemed proper, exempt from taxation, and that the legislature did so exempt it.

The judgment of the Supreme Court of the State will be reversed, and the case remanded to that court for further proceedings not inconsistent with this opinion; and it is

*So ordered.*

MR. JUSTICE STRONG and MR. JUSTICE BRADLEY did not sit in this case nor take any part in deciding it.