Decided 13 February, 1899.

**WILLAMETTE  UNIVERSITY  *v.*  KNIGHT.**

[56 Pac. 124.]

</div>

EXEMPTION FROM TAXATION—EDUCATIONAL INSTITUTION.†—Real property of literary, benevolent, charitable, or scientific institutions incorporated in this state that is leased for trade and profit, though the rentals are used for the purposes of such institutions, is not entitled to exemption from taxation under Hill's Ann. Laws, § 2732, subd. 3: *Hibernian Benevolent Society* v. *Kelly*, 28 Or. 173, followed.

TAXATION—OCCUPATION FOR LITERARY PURPOSES.*—Where an educational institution leased a portion of its campus partly in consideration of improvements to be made on the grounds, but chiefly for the income to be derived from its use for agricultural purposes, it is not "actually occupied" for educational purposes, within Hill's Ann. Laws, § 2732, subd. 3, exempting from taxation property thus occupied.

From Marion :   HENRY H. HEWITT, Judge.

This is a suit by Willamette University and its trustees to enjoin the Sheriff of Marion County from the collection of taxes levied upon certain property of the plaintiff, upon the ground that it is exempt from taxation.   The plaintiff is an educational and literary institution, incorporated in January, 1853, by special act of the legis-

---

†NOTE.—For examples of what institutions have been held to be "scientific," "literary," and "charitable," see *Detroit Home School* v. *City of Detroit*, 6 L. R. A. 97; note to *Auditor-General* v. *University of Michigan*, 10 L. R. A. 376; *State ex rel.* v. *Collector of Chatham*, 9 L. R. A. 198; *Kentucky Female School* v. *Louisville*, 40 L. R. A. 119; *New England Theosophical Corporation* v. *Boston*, 42 L. R. A. 281.

*NOTE.—The effect of using property of a religious, charitable, or educational institution in secular business, or for revenue, upon the right to exemption from taxation is considered in a long note to *Book Agents of Methodist Church* v. *Hinton*, 19 L. R. A. 289; *Church of St. Monica* v. *Mayor of New York*, 7 L. R. A. 70; *Ramsey County* v. *Macalester College*, 18 L. R. A. 278; *American Sunday School Union* v. *Taylor*, 23 L. R. A. 695; *City of Philadelphia* v. *Overseers of Public Schools*,

35 OR.—3.

lative assembly of the Territory of Oregon, whereby it
was given power, among other things, "to acquire, re-
ceive and possess, by donation, gift or purchase, retain
and enjoy, property, real, personal and mixed, and the
same to sell, grant and convey, rent or otherwise dispose
of at pleasure ; provided, that no part of the resources
thereof shall ever be used for any other than educational
purposes, as herein contemplated." In 1887 and long
prior thereto the plaintiff was, and ever since has been,
the owner of a tract of real property bounded by State,
Twelfth, and Winter streets, and an extension of Trade
Street, in Salem, Oregon, containing in all about twenty
acres. The entire tract is contained in one inclosure,
and formerly constituted what was termed the "College
Campus." On the west nine hundred and forty feet of
the tract is situate the university building, wherein are
taught the various branches of literature and science for
which the university was organized ; also the Woman's
College, used as a boarding hall for girls and for the
music department of the university ; a gymnasium
building, and four or five dwelling houses, used mainly
by students attending the university. About the year
1887 the board of trustees entered into a verbal contract
with one Horace Leach whereby it was agreed that he
should enter into the exclusive possession of the east
three hundred and eighty to three hundred and eighty-
five feet of said tract or campus, containing about five

29 L. R. A. 600; *Kentucky Female School* v. *Louisville,* 40 L. R. A. 119. See, also, for
other applications of the same general rule regarding exemption from taxation,
*City of Louisville* v. *Louisville Board of Trade,* 9 L. R. A. 629, and *State ex rel.* v.
*Collector of Chatham,* 9 L. R. A. 198.

For cases in which the tax was sustained because the property was not actu-
ally occupied for literary, charitable, religious, or scientific purposes, see *St. James
Educational Institute* v. *City of Salem,* 10 L. R. A. 573; *Ramsey County* v. *Church of
the Good Shepherd,* 11 L. R. A. 175; *Ramsey County* v. *Macalester College,* 18 L. R.
A. 278. Cases where the tax was held invalid because the property was so occu_
pied: *State ex rel.* v. *Collector of Chatham,* 9 L. R. A. 198, and *Yale University* v.
*New Haven,* 43 L. R. A. 490.—REPORTER.

acres, saving and excepting therefrom a small subdivision in the northeast corner thereof; that he should plant the same to ornamental trees (maple and walnut), for the purpose of permanently improving and beautifying the property, and should prune and cultivate the same during the time of his occupancy; that he should trim and cultivate the hedge about the campus, and keep in repair the sidewalk along the north side thereof, in consideration of which it was agreed on the part of the board that he should be permitted to use and occupy the same as a nursery for the propagation of fruit trees and shrubbery for sale. The original agreement contemplated the propagation and removal of but one growth or crop of such trees and shrubbery, and his occupancy during the time necessary for that purpose. The premises, however, have been reset from time to time as the stock was removed, and since about said year 1887 continuously and exclusively occupied and utilized as a nursery, the planting having been made in the space between the trees set and propagated for ornamental purposes. One Andrews succeeded to Leach's agreement with the board, and to his interest in said premises acquired thereby; and subsequently, about February, 1893, the Capital City Nursery Company succeeded to the same interest. In October, 1893, the nursery company entered into a written agreement with the board for a leasing of the same premises and the subdivision theretofore reserved, upon substantially the same terms above set forth, and for a like occupancy. Aside from the consideration heretofore alluded to, it is admitted by the reply that Leach paid plaintiff for the use of said premises, in addition to the work performed, at the rate of $65 per annum while in possession; and it is shown that Andrews and the nursery company paid at the same rate until the written contract of October, 1893, was

entered into, by the terms of which the nursery company undertook and agreed to pay the sum of $150 per annum. The rentals paid have been used by the board in the proper advancement of the university and its legitimate purposes. About August 20, 1893, the premises then and since occupied by the Capital City Nursery Company were assessed to the university, and it is to enjoin the collection of the taxes levied thereon that this suit was instituted. Plaintiff appeals from a decree sustaining the levy.      AFFIRMED.

For appellant there was a brief and an oral argument by *Messrs. Peter H. D'Arcy* and *S. T. Richardson*.

For respondent there was a brief and an oral argument by *Messrs. Samuel L. Hayden*, District Attorney, and *William M. Kaiser*.

MR. CHIEF JUSTICE WOLVERTON, after stating the facts, delivered the opinion.

1. Does the law exempt from taxation property such as has been assessed to the plaintiff ? In this question are involved two others. The first regards the proper construction to be given the statute regulating such exemptions; and the second is whether the plaintiff has brought itself within the purview of the statute, to be determined upon the facts of the case : *Hibernian Benev. Soc.* v. *Kelly*, 28 Or. 173 (52 Am. St. Rep. 769, 30 L. R. A. 167, 42 Pac. 3), is decisive of the first question, and it seems a work of supererogation to attempt a review of the subject at this time, in view of the careful and exhaustive consideration with which it is treated in the opinion there rendered. Some other authorities, however, not therein cited or alluded to, have been called to our attention, which it is claimed are at variance with

the doctrine of that case; and it is insisted that they are entitled to such weight as to require a revision of the conclusions reached in said opinion.  Much reliance is apparently grounded upon the difference in signification of the terms "use" and "purpose," and the application of either or both to a controversy touching exemptions of the nature here in dispute.  Counsel argue that "there is a distinction between the words 'use' and 'purpose' in exemption statutes," and in support thereof cite the case of *University* v. *People*, 99 U. S. 309.  It must be conceded that the two words bear an entirely different meaning.  The one is rather the employment of a means to an end,—a conversion to an act or purpose,—and the other the object to be subserved or end proposed; and they are so distinguished by Mr. Justice MILLER in that authority.  The case there made was as follows: In 1855 the Legislature of the State of Illinois, by an amendment of the charter of the Northwestern University, provided, *inter alia*, "that all property, of whatsoever kind or description, belonging to or owned by said corporation, shall be forever free from taxation for any and all purposes."  This legislation was had under the constitution of 1848, which declared that "the property of the state and counties, both real and personal, and such other property as the general assembly may deem necessary for school, religious, and charitable purposes, may be exempt from taxation."  In 1870 a new constitution was adopted, which contains the following provision, relating to the same subject, and of course, took the place of the old: "The property of the state, counties, and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery, and charitable purposes, may be exempted from taxation; but such exemption shall be only by gen-

eral law." The Northwestern University was assessed
upon certain parcels of land which it possessed, and
which it had leased, and was using the rentals for the
purposes of the institution. These, it claimed, were
exempt. Judgment was, however, entered against the
parcels so assessed, over the objection of the university,
which, upon appeal to the supreme court of the state,
was affirmed.

A federal question being involved, growing out of the
contractual relations to which the old constitution, the
charter granted under it, and the acts of the university
in pursuance thereof, gave rise, the case was taken by
writ of error to the United States Supreme Court. The
state court held, respecting the constitution of 1848, that
the general assembly was clearly restricted in the exer-
cise of its discretion in making exemptions to property
for school and religious and charitable purposes ; that it
was property for such purposes, in the primary and ordi-
nary acceptation of the term, and which in itself was
adapted to and intended to be used as an instrumentality
in and of such purposes ; and that it was the direct and
immediate use, and not the remote or consequential bene-
fit, through the means of the property, that was contem-
plated. The Supreme Court of the United States would
not subscribe to this exposition of the fundamental law
of 1848. After remarking that the constitution did not
say "property used for schools," as the opinion implies,
and that neither the word "use" nor "schools" was
found in that clause of the instrument, Mr. Justice
MILLER proceeds : "The makers of the constitution,
however, used other language because they had another
meaning, and did not use that because they did not
mean that. They said that the legislature might exempt
from taxation 'such property as they might deem neces-
sary,' not for the use of schools, but 'for school purposes.'

The distinction is, we think, very broad between property contributing to the purposes of a school, made to aid in the education of persons in that school, and that which is directly or immediately subjected to use in the school. The purposes of the school and the school are not identical. The purpose of a college or university is to give youth an education. The money which comes from the sale or rent of land dedicated to that object aids this purpose. Land so held and leased is held for school purposes, in the fullest and clearest sense." Carrying the distinction still further, the learned justice says, in effect, that, under the constitution of 1870, it is only such property as may be exclusively used for school purposes that may be exempted, and that only by general law. In that case the university had theretofore leased the lands which had been assessed to it, and was applying the rents in furtherance of the project or object for which the institution was organized and incorporated; and it was considered that the property was being devoted to school purposes, and it was consequently held that the legislature was authorized by the constitution of 1848 to exempt the property from assessment, because it was being devoted to such purposes.

But it is legitimately and logically deducible from the opinion of the supreme court that the legislature would not have had any such power of exempting like property from assessment and taxation under the later constitution of 1870, whereby it was declared that such property only should be exempted as may be used exclusively for school purposes. As the court say, "the later law was designed to limit the more enlarged power of the earlier one." And, indeed, it was thought that, if the Supreme Court of Illinois had been passing upon an exemption attempted to have been made under the later constitution, its decision would have been right, and the United States

Supreme Court would have affirmed it. Thus, we have a
case from which it may be inferred that real property
leased and the rentals applied for the purposes of the uni-
versity would not be exempt from assessment and taxa-
tion under a law or a constitution which required that
such property should be used exclusively for such pur-
poses. It does not help the appellant, and, if in point, it
is really an authority in harmony with *Hibernian Benev.
Soc.* v. *Kelly,* 28 Or. 173 (52 Am. St. Rep. 769, 30 L. R.
A. 167, 42 Pac. 3). Our legislature has enacted that
"the personal property of all literary, benevolent, chari-
table and scientific institutions, incorporated within this
state, and such real estate belonging to such institutions
as shall be actually occupied for the purposes for which
they were incorporated shall be exempt from taxation."
The word "occupied" in this statute takes the place of
the word "used" in the Illinois Constitution of 1870.
These terms are often employed interchangeably, and
are, in a sense, synonymous; and yet some authorities
distinguish between them, giving the word "used" a
broader signification than "occupied." It is sufficient
for our purpose, however, that they may bear a similar
import when employed in the designation of property
which it is designed to exempt from assessment and tax-
ation.

A case from Massachusetts is instructive. We refer
to *Mt. Hermon Boys' School* v. *Gill,* 145 Mass. 139 (13 N.
E. 354). The statute there exempts "the personal prop-
erty of literary, benevolent, charitable and scientific in-
stitutions incorporated within this commonwealth, and
the real estate belonging to such institutions, occupied
by them or their officers for the purposes for which they
were incorporated :" Pub. St. Mass. c. 11, § 5, cl. 3. In
that case it appears that the plaintiff was the owner of
about four hundred acres of land, which was utilized for

farming and the pasturage of live stock kept and used upon said farm, and gave employment to the boys attending the institution, which employment constituted a part of their course of training while in attendance thereat. The corporation sold the surplus products and live stock of the farm, some for cash and some it bartered for such commodities as were needed for carrying on the institution. Because of this fact, the authorities assessed the live stock upon the farm, and the farm itself, to the institution; and the question came up whether the same was exempted from assessment and taxation under the law above quoted. In deciding the controversy, KNOWLTON, J., speaking for the court, says : "The use of the farm and of the personal property upon it resulted beneficially to the plaintiff in three different ways : First, it furnished for the scholars the field, objects, and materials necessary for their physical training and practical study of agriculture, in connection with manual labor and the general development referred to in the above-quoted statement of the purposes and aims of the school; secondly, it provided food for the pupils and teachers who were in attendance, and contributed directly to the economical support of the scholars, which was an important object of the institution; thirdly, so far as the products of the farm were sold, the plaintiff presumably obtained profit, and to that extent replenished its treasury. The use of the property to accomplish either of the first two results would be for the purpose for which the corporation was formed, within the meaning of the statute we are considering, and would leave the whole exempt from taxation; the use of it to accomplish the last would not." Further on he says : "The purpose referred to in the statute contemplates the direct and immediate result of the use of the property, and not the consequential benefit to be de-

rived from the improvement of it. * * * The practical difficulty in cases of this kind is to ascertain the purpose for which the real estate is occupied. When that is determined, the result is reached. ' * * * The fact that products were sold is a circumstance important only so far as it characterizes the use. We think that the sales were merely incidental to a use for the purposes of the institution.''

The conclusion of the court was that the farm and the property upon it were used in the legitimate management of the school, directly and immediately for the accomplishment of its purposes, and not to obtain money for subsequent use in accomplishing them ; that the primary object of the institution was thus subserved by the direct use of both kinds of property involved by the assessment ; and that the money or other commodities realized from the sale of surplus products were acquired incidentally to the appropriate use of the property for the purposes of the institution, and therefore the mere fact that the money or commodities thus accrued to the benefit of the institution did not so characterize the property as to free it from the exemption. It will be noted that the words ''used'' and ''occupied'' are employed interchangeably throughout the opinion of the learned judge, and were thus accorded a like signification ; and the conclusion arrived at was that it was the direct and immediate use of the property for the purposes of the institution which brought it within the statute, and that the incidental profits derived from its employment for such purposes were not sufficient to put it without. The inference is irresistible, however, that had the acquirement of the profits been the principal purpose of the use made of the stock and farm, and not an incident only arising from a proper use thereof, the property assessed would not have been held to come within the exemption. How much

stronger, then, would be the reason for not exempting the property when occupied and employed for purposes otherwise than that for which the institution was incorporated, and the profits were going to replenish the treasury, although such profits were being used for the advancement of the institution. The case is stronger, still, where rents are derived from lands of the institution occupied by other persons, and for a purpose entirely foreign to that for which it was incorporated. Such rents are profits as well which go to replenish the treasury, and the use is exclusively of the incident, and not of the property directly and immediately for the purposes contemplated.

We have dwelt upon these cases at length for the reason that they are mainly relied upon as requiring a modification of the doctrine held in the *Hibernian Society Case* in this state; but, when carefully analyzed and properly understood, they are in harmony with it, and, in reality, are opposed to the position of appellant here, so far, at least, as they may have application. It must be admitted that there are some very respectable authorities apparently opposed to our *Kelly Case*, among them *Book Agents of Methodist Church* v. *Hinton*, 92 Tenn. 188 (19 L. R. A. 289, 21 S. W. 321), and *North St. Louis Gymnastic Society* v. *Hudson*, 85 Mo. 32, 12 Mo. App. 342, which are cited in the brief of counsel; but the two cases above mentioned cannot be classed in that category, nor can those of *People ex rel.* v. *Purdy*, 58 Hun, 386 (12 N. Y. Supp. 307), and *Temple Grove Seminary* v. *Cramer*, 26 Hun, 309. True, the Massachusetts statute differs somewhat from ours in the use of the words "by them or their officers," qualifying the term "occupied." The distinction, however, is more apparent than real. The direct occupancy or the direct employment of the thing or property for the purposes of the institution is the test of

exemption, and the specific or immediate agency which
may install and control the occupancy or may direct the
employment could make no difference in the result to be
accomplished. Our attention has been attracted to the
expression "not leased or otherwise used with a view of
pecuniary profit," and expressions of similar import
employed in other statutes, and of the absence thereof
in our own ; and it is argued that these were more or
less controlling in the establishment of the rule adopted
elsewhere in line with our *Hibernian Society Case.* No
such clause, however, is contained in the Massachusetts
statute, and the same rule is thoroughly established in
that state : *Pierce* v. *Inhabitants of Cambridge*, 2 Cush.
611 ; *Chapel of Good Shepherd* v. *City of Boston*, 120
Mass. 212 ; *Proprietors of Meetinghouse in Lowell* v. *City
of Lowell*, 1 Metc. 538 ; *Mt. Hermon Boys' School* v. *Gill*,
145 Mass. 139 (13 N. E. 354). One observation will
apply in the main to all those statutes as compared with
ours. Those other words were introduced, no doubt, to
avoid controversy, and simply for greater explicitness in
defining what was really meant by language identical
with that employed in our statute. We think the doc-
trine of *Hibernian Benev. Soc.* v. *Kelly*, 28 Or. 173 (52
Am. St. Rep. 769, 30 L. R. A. 167, 42 Pac. 3), should
be adhered to. That the university was given power to
sell, grant, and convey, rent, or otherwise dispose of its
real property at its pleasure does not help it. There was
no attempt in the charter to exempt any of its property
from assessment and taxation, and the institution, like
others of its class, must look to the general laws alone
for whatever relief of that nature it is entitled to : *Chapel
of Good Shepherd* v. *City of Boston*, 120 Mass. 212.

2. This brings us to the second question—whether
plaintiff has brought itself within the purview of the
statute. If we keep in mind the cardinal principles form-

ing the basis of the doctrine which we have adopted, it will aid us materially in applying the facts to the law. These are that a literary, benevolent, charitable, or scientific institution of the character contemplated by the statute renders such a service to the public that it is entitled to the exemption; and it is because it is capable of and is presumed to render such a service that it is upheld under the constitution, and is permitted to form an exception to the just and equitable principle that all taxes should be equal and uniform, and that property so occupied by such an institution does not come in competition with the property of other owners, or with those embarked in other occupations or pursuits.    One object which the plaintiff had in view in leasing the premises was the improvement and permanent adornment of the grounds, and perhaps with a view to constructing a building thereon to be devoted to the legitimate purposes of the institution.    We say "leasing" because the transaction is not susceptible of any other designation.    The plaintiff parted with the actual and exclusive possession and control of the premises assessed for a consideration to be rendered by the party to whom possession was given, which characterizes the agreement as a lease.    This, however, was not its sole object.    The cash rental was not inconsiderable, or, at least, it was not nominal.    It was at the rate of $13 per acre when unimproved, and, in its improved condition, was increased to $30 per acre; and we may suppose, therefore, that the cash rental formed an important feature in the transaction, and that without it the leasing would hardly have been made by the university.    So that we cannot say that the sole or even the primary object of the leasing was to improve and beautify the campus grounds, with a view to their further occupancy for the legitimate purposes of the institution.    The fact remains, however, that the premises

were "actually occupied," not by the institution itself, but by other persons, and for purposes other than that for which it was organized, and for which a substantial cash rental was paid, which went into the treasury of the plaintiff. They were occupied also for the purposes of business and profit, which came in direct competition with business of like nature and kind carried on elsewhere by other persons. So, we find that both principles upon which the exemption statute is based and upheld are especially wanting as it concerns the exemption here sought. Both improvement and adornment of the campus and the cash rentals received cannot be said to follow as incidents only of the occupation by the university for educational and literary purposes, as was the case in *Mt. Hermon Boys' School* v. *Gill*, 145 Mass. 139 (13 N. E. 354); but they are constituted, by express agreement, a direct consideration for use and occupation of the premises by other persons, and for other and entirely different and distinct purposes; hence we are impelled to the conclusion that the property was not exempt from taxation. It follows that the decree of the court below should be affirmed, and it is so ordered.

AFFIRMED.

MR. JUSTICE MOORE, being one of the trustees of the university, did not participate in the decision.

---

*The statute under consideration here is section 2782, subd. 3, viz.: "The personal property of all literary, benevolent, charitable and scientific institutions, incorporated within this state, and such real estate belonging to such institutions as shall be *actually occupied* for the purpose for which they were incorporated," shall be exempt from taxation.—REPORTER.