Argued September 14, reversed November 4, 1964

# BOARD OF PUBLICATION OF THE METHODIST CHURCH *v.* STATE TAX COMMISSION

396 P. 2d 212

*Gerald F. Bartz,* Assistant Attorney General, Salem, argued the cause for appellant. With him on

the briefs were Robert Y. Thornton, Attorney General, and Carlisle B. Roberts, Assistant Attorney General, Salem.

*Randall S. Jones,* Portland, argued the cause for respondent. With him on the brief was Frank Phelps, Portland.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

SLOAN, J.

It is necessary to decide, in this case, if plaintiff is exempt from Oregon corporation excise taxes as permitted by ORS 317.080(4). The Tax Court held that is was, the Commission appeals.

Plaintiff is a non-profit corporation organized under the laws of Illinois. Plaintiff is wholly owned and controlled by the Methodist Church. Plaintiff was organized by the Methodist Church to consolidate its printing, publishing and sales efforts that had previously been divided between four predecessor corporations. Plaintiff prints, publishes and sells all types of religious publications, such as Sunday School lessons, magazines, church programs and the like, all of which are sold to churches and, presumably, church officials, teachers and the public generally. It sells Bibles, of course, but these are printed by others. In addition plaintiff published and sells popular and non-religious books and magazines of various kinds. The books of general interest are published under the labels of Abingdon Press and Apex Paperbacks. These books provide a variety similar to that of any other publisher of books intended for sale to the public. Plaintiff also

sells movie film, furniture, jewelry, toys and a variety of other products. Most of the selling of the materials described is by outlets bearing the name of Cokesbury Book Stores.

There is a Cokesbury Book Store in Portland. This store, located in the heart of downtown Portland, is not unlike any other commercial book store in appearance or in the goods offered for sale. The evidence reflects that the merchandise in the store suggests a little more flavor of religious significance than other stores but any unknowing customer would find little difference between plaintiff's store and other book stores in the same business area. The store does a large volume of business. It is said that about 85 percent of plaintiff's Portland sales are to churches and church organizations. The remaining 15 percent of its sales plaintiff is unable to account for. Some of the sales are, of course, of material strictly religious in character. Some of the sales are of materials having no direct relationship to religion in any form.

For our purposes we think it is immaterial to what extent its sales may be related to church activity or in the furtherance of particular religious beliefs. All of plaintiff's business is for profit. It is commercial. It is of little consequence whether it sells Bibles for a profit or whether it sells pianos or tractors. It is in business to profit. It is in direct competition with other privately owned publishers and retail stores doing a similar business.

Plaintiff's total national receipts for the fiscal year ending May 31, 1961, were in excess of $26,000,000. This is roughly segregated by plaintiff with five categories of receipts: 1. Sunday School materials. 2. Magazines. 3. Printing for other organizations.

4. Books and supplies. 5. Sales of materials not produced or published by plaintiff.

Plaintiff's net proceeds, after deductions for expenses, costs and revenues, are paid to the Methodist Church and are used to apply on or pay pensions for retired ministers, widows of ministers and their children. Plaintiff, therefore, contends that inasmuch as the fruits of plaintiff's business are eventually destined for a charitable or religious purpose plaintiff's business income is therefore exempt from taxation.

ORS 317.080 provides:

"The following corporations are exempt from the taxes imposed by this chapter:

"*    *    *    *    *

"(4) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual."

■ The first question to consider is presented by plaintiff's argument that in cases involving religions or charities the statutes specifying the exemptions are to be liberally construed. In support of this argument plaintiff cites cases decided by the Federal courts interpreting similar exemptions allowed by the Internal Revenue Code. The cases cited clearly say that the Federal courts will liberally construe an exemption statute for the purposes mentioned. Oregon from the first interpretive decision of this court until the last has held exactly the opposite. *Benevolent Society v. Kelly*, 1895, 28 Or 173, 196, 42 P 3, 30 LRA 167, to *Santiam Fish & Game Ass'n v. Tax Com.*, 1962, 229 Or 506, 516, 368 P2d 401. And this has been true

whether the court was concerned with the taxation of property, *Mult. School of Bible v. Mult. Co.*, 1959, 218 Or 19, 343 P2d 893, or of income, *Ore. Physicians' Serv. v. State Tax Com.*, 1960, 220 Or 487, 493, 349 P2d 831. Regardless of some of the decisions by the Federal courts, the rule of strict construction is established in Oregon tax law.

It is equally true that the Oregon decisions already cited, and other similar cases, deny plaintiff corporation, as such, an exempt status. The theory underlying exemption has been no better expressed anywhere than by Mr. Justice WOLVERTON in *Willamette University v. Knight,* 1899, 35 Or 33, 44, 45, 56 P 124:

> "This brings us to the second question—whether plaintiff has brought itself within the purview of the statute. If we keep in mind the cardinal principles forming the basis of the doctrine which we have adopted, it will aid us materially in applying the facts to the law. These are that a literary, benevolent, charitable, or scientific institution of the character contemplated by the statute renders such a service to the public that it is entitled to the exemption; and it is because it is capable of and is presumed to render such a service that it is upheld under the constitution, and is permitted to form an exception to the just and equitable principle that all taxes should be equal and uniform, and that property so occupied by such an institution does not come in competition with the property of other owners, or with those embarked in other occupations or pursuits."

This idea has permeated all of our later decisions above cited. The competitive, commercial nature of its business precludes exemption to plaintiff.

However, plaintiff's primary contention has been that the State of Oregon has adopted what has become

known as the "destination of income" theory for determining the right to exemption. It has been argued that it is the destination of the income not the source thereof that eventually determines the right to exemption.

This theory of exemption developed from a decision of the *Federal Supreme Court in Trinidad v. Sagrada Orden,* 1924, 263 US 578, 44 S Ct 204, 68 L Ed 458. In that case, at 263 US 581, the Court in referring to the Federal Exemption Statute stated that: "[the statute] says nothing about the source of the income, but makes the destination the ultimate test of exemption." This language was later used in the case of *Roche's Beach, Inc. v. Commissioner of Internal Revenue* (2nd Cir 1938), 96 F2d 776, to enable a corporation organized for profit but where the income therefrom was used for the benefit of charities, to be declared exempt from federal income tax. In the *Roche's Beach* case Judge Learned Hand dissented. The case has been followed by some of the other circuit courts but not in all. For reasons later stated it is not necessary to make further reference to these cases. They are examined in Blodgett, Tax Status of Business Activities of Charities Prior to the Revenue Act of 1950, Proc. of NYU 9th Ann. Inst. on Fed. Taxation, 885 (1951), and the cases are also dissected in *United States v. Community Services* (4th Cir 1951), 189 F2d 421. We have mentioned these federal cases because plaintiff's basic assumption has been that the destination of income doctrine was, prior to 1950, firmly established as the federal rule of exemption. We think the cases cited indicate that the federal rule was not firmly established but was in conflict.

It is well known, of course, that prior to 1950, and because of these federal decisions (most of which did

not receive Internal Revenue acquiescence) many valuable and profitable businesses and properties were transferred to various exempt institutions for income tax advantages. In the Revenue Act of 1950 Congress adopted various statutes to avoid this practice. Here we are concerned with two of the sections of that Act. One of these, § 301(b), of the Revenue Act of 1950, was designed to avoid the federal exemption for so-called "feeder" corporations. The other, § 301(a), we are concerned with, imposed the income tax on a business conducted by an otherwise exempt organization which was "unrelated" to its principal function. The nature and purpose of these acts was explained in Senate Report No. 2375, on the Revenue Act of 1950 at 2 US Code Congressional Service, 81st Congress, 2nd Session, at page 3078, et seq. It has been authoritatively stated that the Congressional intent was to clarify the law in regard to the "feeder" corporations, not to change the law. *United States v. Community Services,* supra, 189 F2d at 426, 427.

In 1959, the Oregon Assembly enacted ORS 317.910, et seq. That statute was identical in purpose to the "unrelated" income tax imposed by the above-mentioned Congressional Act. ORS 317.910 et seq. imposed a tax on the "unrelated" income of an Oregon exempt organization. The legislature did not enact a statute similar to the federal statute which positively avoided exemption to the "feeder" corporations. Because of this failure of the legislature to specifically provide for taxation of the feeder corporations, plaintiff contends that it was a manifestation of the legislative intent to allow exemptions to the "feeder" corporations such as plaintiff. We do not read the legislative intent in that way. It appears to us to be much more clear that the legislature was aware that such an act was

unnecessary in Oregon and that organizations, like plaintiff, that served as "feeders" to exempt organizations had always been taxed in Oregon. Our cases, and the previous regulations of the State Tax Commission (1955 Regulations Section 7.0804) had denied any recognition of the destination of income doctrine in respect to the exempt status of an organization.

Again, returning to our earliest case, *Benevolent Society v. Kelly,* supra, 28 Or at 193 and 194, we find this language:

"* * * It is the actual occupancy of the property which determines its right to exemption, and not the use made of its proceeds. * * *

"* * * * *

"* * * It deals with the property as it finds it, and not with what may be done with its proceeds in the future. * * *"

The same theory can be taken from the opinion in *Willamette University v. Knight,* supra, 35 Or 33, though it was not expressly stated. In *Kappa Gamma Rho v. Marion County,* 1929, 130 Or 165, 175, 279 P 555, it was said that: "Ordinarily a dwelling-house, even when belonging to a college or university, but rented to teachers and occupied by them for their own convenience, is not exempt from taxation." This was a recognition that it was the use of the property and not the destination of income that was the key to exemption. In the cases of *Mult. School of Bible v. Mult. Co.,* supra, 218 Or at 39, and in *Ore. Physicians' Serv. v. State Tax Com.,* supra, 220 Or at 507, and in *Santiam Fish & Game Ass'n v. Tax Com.,* supra, 229 Or 506, we again adhered to the doctrine that it was the source of the income not the destination that was decisive.

In *Mult. School of Bible* it had been argued that the property in question was exempt because all of the profits were "immediately channeled back into the school, where it was employed for purposes for which the school was organized." This, we held, did not permit exemption "for this mercantile enterprise maintained by the school." 218 Or at 39. In *Oregon Physicians' Service* we said that even if all of the proceeds of that plaintiff's business were devoted to charity it would not permit exemption.

It is, of course, recognized that the legislature could not have had the last-cited cases in mind when it was in session in 1959. However, the cases reflect, by citation to the earlier cases, that this has been recognized as the established rule in Oregon. It is also significant that the rule was equally recognized in both property and income taxation. We think the legislature, in 1959, was well aware that both the State Tax Commission and the Oregon courts had given no recognition to the destination of income rule that had been adopted by some of the Federal decisions and which Congress found necessary to clarify. Our legislature had no need for a similar enactment.

We think it also persuasive that in the only similar state court cases we can find or that have been cited, both almost identical to the instant case, the state courts have considered and refused to follow the federal cases that adopt the destination of income as the test. *Murphy v. Concordia Publishing House* (a Lutheran Synod organization very similar to plaintiff), 1941, 348 Mo 753, 155 SW2d 122, 136 ALR 1461, and *Midwest Solvents Co. v. State Com'n of Rev. & Tax.*,

1958, 183 Kan 104, 325 P2d 311. The Kansas case, written by Justice Wertz, considered an exemption statute almost identical to our own. The opinion carefully and fully analysed the federal cases and refused to apply the destination of income test. We accept this opinion as very persuasive. Although not expressly stated in these cases, we think it apparent that unlike the 2nd Circuit Court of Appeals in *Roche's Beach, Inc. v. Commissioner of Internal Revenue,* supra, 96 F2d at 779, the state courts apply a rule of strict construction to exemption statutes. In the *Roche* decision it was said that statutes exempting charities are not to be narrowly construed. This, we think, is a fundamental difference between the state and federal decisions.

In a New York case, *Mohawk Mills Ass'n, Inc. v. Miller,* 1940, 260 App Div 433, 22 NYS2d 993, the court was also asked to apply the destination of income test and the court stated that the federal cases had no persuasive force because they were contrary to previous New York decisions that had held that it was the corporate power that governed the right to exemption, not the use of its income. In the New York case, too, emphasis was placed upon the rule that "[Exemption] must rest upon language in regard to which there can be no doubt as to the meaning, and the exemption must be granted in terms too plain to be mistaken."

We conclude, therefore, that neither our own decisions nor the other state cases cited, nor the claims of legislative intent support plaintiff's claim of exemption.

■ Plaintiff also argues that it should be taxed only on its income from the sale of articles and materials

that are not related to a religious purpose pursuant to ORS 317.910 et seq. That statute only applies to organizations that are otherwise exempt as permitted by ORS 317.910. Since we have held that plaintiff is not exempt, the statute has no application.

The judgment of the Tax Court is reversed and the order of the Tax Commission is reinstated.