No. 57          September 15, 2016          257

IN THE SUPREME COURT OF THE
STATE OF OREGON

HABITAT FOR HUMANITY OF
THE MID-WILLAMETTE VALLEY,
*Plaintiff-Appellant,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant-Respondent,*
*and*

MARION COUNTY ASSESSOR,
*Intervenor-Respondent.*

(TC 5234, SC S063542)

En Banc

On appeal from Oregon Tax Court.*

Argued and submitted June 14, 2016.

Gina Anne Johnnie, Sherman, Sherman, Johnnie & Hoyt, LLP, Salem, argued the cause and filed the brief for appellant.

Robert M. Wilsey, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent Department of Revenue. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

No appearance on behalf of respondent Marion County Assessor.

WALTERS, J.

The judgment of the Tax Court is reversed. The case is remanded to the Tax Court for further proceedings.

_____
 * 22 OTR 102 (2015).

**WALTERS, J.**

In this direct appeal from the Regular Division of the Tax Court (Tax Court), we consider whether taxpayer, Habitat for Humanity of the Mid-Willamette Valley (Habitat), is entitled to an exemption from property taxes assessed on a vacant lot that it owned. During the relevant time, Habitat intended to build a home on the lot but had not yet started construction. The Marion County Assessor (the county) denied Habitat's application for a tax exemption under ORS 307.130(2)(a), which provides nonprofit institutions with a tax exemption on "such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions." The Tax Court affirmed, holding that Habitat was not using the vacant lot to carry out its charitable work at the time of the assessment. For the reasons stated below, we disagree and reverse the Tax Court's ruling.

The parties do not dispute the relevant facts. Habitat is a nonprofit corporation. According to the stipulated facts, Habitat's articles of incorporation state that one of its purposes is to acquire vacant lots and build affordable housing on those lots. Consistent with that, in September 2012, Habitat acquired a residentially zoned vacant lot in Marion County for "the sole purpose of later building a residential home on it using volunteer labor and selling it to a low-income family at a price below market." In August 2013, Habitat applied to the county for an exemption from 2013-14 property taxes under ORS 307.130(2)(a), which provides,

"[T]he following property owned or being purchased by art museums, volunteer fire departments, or incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

"(a)   * * * [O]nly such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

Later that month, the county denied Habitat's exemption application, stating that the lot was not being "'actually and exclusively occupied or used' for the charitable purpose of

providing homes to the needy." In September 2013, Habitat applied for a building permit. Upon receiving the building permit in October 2013, Habitat began constructing a home on the property.

Habitat appealed the denial of the exemption request to the Magistrate Division of the Tax Court. "The burden of establishing entitlement to an exemption is on the taxpayer claiming the exemption." *Dove Lewis Mem'l Emergency Veterinary Clinic, Inc. v. Dept. of Rev.*, 301 Or 423, 426-27, 723 P2d 320 (1986). The magistrate held that, as a matter of law, Habitat failed to establish its entitlement to an exemption; accordingly, it denied Habitat's motion for summary judgment and granted the cross-motion for summary judgment filed by the county and intervenor Department of Revenue (the department). *Habitat for Humanity of the Mid-Willamette Valley v. Marion Cty. Assessor*, TC-MD 130518C, 2014 WL 3890325 (Or Tax M Div, Aug 8, 2014). Habitat then appealed to the Regular Division of the Tax Court, which also denied Habitat's motion for summary judgment and granted the department's cross-motion for summary judgment. *Habitat for Humanity v. Dept. of Rev.*, 22 OTR 102 (2015).

In reaching that result, the Tax Court relied on this court's case law interpreting ORS 307.130(2)(a), which the Tax Court read as precluding an exemption for vacant land. *Id.* at 104 (citing *Emanuel Lutheran Charity Bd. v. Dept. of Rev.*, 263 Or 287, 502 P2d 251 (1972)). Further, the Tax Court contrasted the statutory language in ORS 307.130(2)(a), which refers to real property being "occupied or used," with other exemption statutes that distinguish between "using" property and "holding" property. *Id.* at 104-05. Based on that analysis, the Tax Court entered a general judgment in favor of the department, reasoning that Habitat did not qualify for an exemption under ORS 307.130(2)(a) because Habitat was merely holding its land rather than using it.

Habitat directly appealed that decision to this court. *See* ORS 305.445 (authorizing such appeals). This court's review of a Tax Court decision is "limited to errors or questions of law or lack of substantial evidence in the record to support the tax court's decision or order." ORS 305.445.

Because this is an appeal from a grant of summary judgment, the issue presented is a question of law: whether the Tax Court erred in concluding that there was no genuine issue of material fact and that the department was entitled to judgment as a matter of law. TCR 47 C (standard for granting summary judgment); *see also* [Tektronix, Inc. v. Dept. of Rev.](), 354 Or 531, 533, 316 P3d 276 (2013) (applying standard). As noted above, the parties do not dispute the relevant facts. The question before us is whether, under those undisputed facts, the Tax Court correctly interpreted and applied the relevant exemption provision, ORS 307.130(2)(a), in determining that the department was entitled to judgment as a matter of law.

On that question, the parties dispute whether, the lot at issue was "actually and exclusively occupied or used" by Habitat in carrying on its charitable works. ORS 307.130(2)(a). That is a question of statutory interpretation. In attempting to resolve questions of statutory interpretation, our goal is to discern what the legislature intended a provision to mean by reviewing the text in context as well as any pertinent legislative history. [Comcast Corp. v. Dept. of Rev.](), 356 Or 282, 295, 337 P3d 768 (2014). If the legislature's intent remains unclear, then we resolve any ambiguity by applying appropriate canons of statutory construction. [State v. Gaines](), 346 Or 160, 172, 206 P3d 1042 (2009).

However, "[w]e also consider this court's prior construction of the statutes at issue." [State v. McAnulty](), 356 Or 432, 441, 338 P3d 653 (2014), *cert den,* 136 S Ct 34, 193 L Ed 2d 48 (2015); *see also* [Liberty Northwest Ins. Corp., Inc. v. Watkins](), 347 Or 687, 692, 227 P3d 1134 (2010) ("As part of the first level of analysis, this court considers its prior interpretations of the statute."). This court has construed the relevant exemption provision in numerous previous decisions. *See YMCA v. Dept. of Rev.*, 308 Or 644, 651, 784 P2d 1086 (1989) (so stating and examining history of the tax exemption statute).[1] When a prior construction implicates the

---

[1] In reaching those prior constructions, the court has frequently stated that tax exemption statutes are subject to the rule of "strict but reasonable construction." *See, e.g.*, *Emanuel Lutheran*, 263 Or at 291 (applying rule); *Willamette Univ. v. Tax Com.*, 245 Or 342, 344, 422 P2d 260 (1966) (same); *Multnomah School of Bible v. Multnomah Co.*, 218 Or 19, 28, 343 P2d 893 (1959) (same). The rule of

interpretative question before us, "the court may consider itself bound to follow a prior construction as a matter of *stare decisis*." *Halperin v. Pitts*, 352 Or 482, 492, 287 P3d 1069 (2012); *see also Farmers Ins. Co. v. Mowry*, 350 Or 686, 695-96, 261 P3d 1 (2011) (discussing common considerations that arise when determining the weight of a previous decision).

According to the department, the Tax Court correctly concluded that our case law resolves the dispute presented by this case. Like the Tax Court, the department maintains that this court's decision in *Emanuel Lutheran*, 263 Or 287, establishes a bright-line rule precluding a property tax exemption, under ORS 307.130(2)(a), for vacant lots and requiring at least that the taxpayer have a building under construction on the property before the taxpayer may be eligible for the exemption.

In *Emanuel Lutheran*, the taxpayer operated a non-profit hospital and had purchased lots around the hospital for future expansion of the existing hospital. 263 Or at 288-89. There was no dispute that once those new buildings were completed, the hospital could receive a tax exemption for those properties. Nevertheless, the department argued that the hospital was not yet entitled to an exemption on the surrounding lots because the lots were vacant at the time of the assessment.

The hospital countered that the tax exemption provision extended to property being prepared to serve a charitable purpose. The hospital based that argument on *Willamette Univ. v. Tax Com.*, 245 Or 342, 422 P2d 260 (1966), in which the court held that a university was entitled to a property tax exemption for four parcels of land

---

strict but reasonable construction is generally in accord with the methodology noted above. "Strict but reasonable means merely that the statute will be construed reasonably to ascertain the legislative intent, but in case of doubt will be construed against the taxpayer." *Emanuel Lutheran*, 263 Or at 291. In other words, the court starts by attempting to ascertain legislative intent because "the intention of the legislature must be the primary objective sought." *Willamette Univ.*, 245 Or at 344. But if the court cannot discern the legislative intent, then the court resolves any ambiguity by applying appropriate canons of statutory construction. One canon available in tax exemption cases is the canon "that statutes providing exemption from taxation are to be strictly construed" against the taxpayer and in favor of the state. *Id.*

upon which the university had begun constructing student housing buildings.[2] *Id.* at 344. In doing so, the court determined that the phrase "actually occupied and used," as it appears in the tax exemption statute, is not limited to property that directly carries out the taxpayer's charitable purposes but also includes property "then being prepared to carry out the purposes of the exempt charity." *Id.* at 349. Because the university was in the process of constructing buildings intended to advance its educational purposes, there was no dispute that the property met that standard—*i.e.*, that the property was "being prepared to carry out the purposes of the exempt charity." *Id.* As a result, the court held that the property at issue was "being occupied and used" to carry on the university's educational purposes. *Id.* at 346.

Like the taxpayer in *Willamette Univ.*, the hospital in *Emanuel Lutheran* sought a tax exemption for property that it was not yet occupying or using to directly carry out its charitable purposes—namely, providing medical services to patients as well as teaching and research services. *Emanuel Lutheran*, 263 Or at 288-89. Nevertheless, the hospital argued that, like the taxpayer in *Willamette Univ.*, it was entitled to an exemption because it was preparing the property to serve those purposes. However, *unlike* the taxpayer in *Willamette Univ.*, the hospital in *Emanuel Lutheran* had not yet begun construction of the new buildings that would serve its charitable purposes. Instead, the hospital was "preparing" the property to serve its charitable purposes only "in the sense that it was taking steps under its master plan to procure detailed plans and financing." *Id.* at 291. Thus, at the time of the assessment, the hospital's lots remained "vacant awaiting future use." *Id.* at 289.

This court rejected the hospital's argument and refused to extend the holding of *Willamette Univ.* to preparations so far removed from a taxpayer's charitable purpose:

---

[2] There was also in dispute a fifth parcel of land that provided parking to those working on the construction project. Whether the parking lot justified tax exemption depended on whether the buildings under construction justified a tax exemption, because the tax exemption statute provided a separate paragraph exempting parking lots used in conjunction with charitable works. ORS 307.130(1)(b) (1955), *renumbered as* ORS 307.130(2)(b).

"By requiring that exempt property be actually occupied for charitable or other exempt purposes the legislature must have meant something more than mere ownership or even ownership with an intent to put the land to an exempt use in the future. Actual occupancy must mean as a minimum that the land be occupied by a building under construction."

*Id.* at 291-92. According to the court, "land merely being held for future use is not being actually occupied or used for the benevolent or charitable work carried on by [the hospital]." *Id.* at 292. The court therefore concluded that the hospital was not entitled to tax exemption on the vacant lots at issue in that case.

In this case, as noted above, the department reads *Emanuel Lutheran* as creating a bright-line rule: To be eligible for the exemption, property must at least have a building under construction. The department concludes that, because Habitat had not yet started construction at the time of the assessment at issue in this case, Habitat's property is like the nonexempt lots in *Emanuel Lutheran* rather than the exempt lots in *Willamette Univ.*, thus preventing Habitat from establishing its eligibility for exemption.

Habitat does not ask us to overrule *Emanuel Lutheran*. Instead, it contends that the department misreads *Emanuel Lutheran* as turning entirely on the fact that the property in that case was vacant, rather than considering how the vacant property fit within the hospital's charitable works. Habitat insists that the scope of the exemption statute should be defined by the specific works carried on by a specific taxpayer. Thus, according to Habitat, whether property is "actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions" will differ depending on the nature of the work that a taxpayer carries on and the relationship between that work and the property at issue. ORS 307.130(2)(a).

On that point, Habitat is correct. As this court said in *Multnomah School of Bible v. Multnomah Co.*, 218 Or 19, 28, 343 P2d 893 (1959), the scope of the exemption statute is defined by

"the primary purpose for which the institution was organized and includes any property of the institution used

exclusively for any facility which is incidental to and reasonably necessary for the accomplishment and fulfillment of the generally recognized functions of such a charitable institution."

*Id.* at 36-37.

In *Multnomah School of Bible,* a county refused to exempt two properties that a college was using as residences for its dining hall supervisor and superintendent of buildings. *Id.* at 37. The court held that, although the school did not use the property to directly provide educational instruction, the school was entitled to an exemption. *Id.* In reaching that result, the court avoided broad categorical rules and, instead, attempted to follow "a road distinguished for its appreciation of common sense and reason." *Id.* at 33. The court reasoned that because the taxpayer was a college, the exemption extended to "'any facilities which are reasonably necessary for the fulfillment of a generally recognized function of a complete modern college.'" *Id.* at 30 (quoting *Church Divinity Sch. of Pac. v. Alameda Cty.*, 152 Cal App 2d 496, 502, 314 P2d 209 (1957)). One reasonably necessary function of a college, the court said, is "the continuance of the health, safety and comfort of its students while under its domain and to the extent reasonably necessary to afford such protection by the proper maintenance of its plant and without interruption or delay in the use of its institutional facilities." *Id.* at 37. And, according to the court, that function was advanced by having staff live near the facilities that they served. *Id.* ("[I]t [is] highly expedient that they should reside where they do and not elsewhere.").

Thus, the court's decision in *Multnomah School of Bible* turned on the specific charitable purposes of the taxpayer and the function of the property to serve those purposes. Similarly, in *Emanuel Lutheran*, the court defined the scope of the exemption with reference to the hospital's charitable works. 263 Or at 289 ("The simple issue is whether the property on the assessment date was 'actually and exclusively occupied or used' *by Emanuel in the benevolent and charitable work carried on by it.*" (Emphasis added.)); *id.* at 292 ("[L]and merely being held for future use is not being actually occupied or used for *the benevolent or charitable*

*work carried on by [the hospital].*" (Emphasis added.)). Just as a taxpayer's entitlement to an exemption for staff residences turns on the taxpayer's charitable purposes, so too does a taxpayer's entitlement to an exemption for vacant land. A different taxpayer having charitable purposes different from those of the college in *Multnomah School of Bible,* would not necessarily be entitled to an exemption for staff residences. And, similarly, just because the court determined in *Emanuel Lutheran* that a hospital was not occupying or using vacant land in carrying on its charitable works does not mean that a different taxpayer with different charitable purposes also must be denied an exemption for its vacant land.

In *Emanuel Lutheran,* the court held that the hospital's primary charitable purposes were medical, research, and teaching services. The hospital's charitable work was not building a hospital facility, but operating a hospital. The purpose of the hospital facility was to provide a location for the hospital's future charitable works. Thus, developing land to add more hospital space might allow a hospital to do more charitable work, but the development of the land was not itself the hospital's charitable work. Nevertheless, the court did not require that the hospital actually complete development of the land and conduct medical, research, and teaching services on the land in order to obtain the exemption it sought. Rather, the court required only that the hospital take a preparatory step toward completing the development of its land and toward conducting its charitable activities; the court required that the hospital demonstrate that the facility be under construction.

In contrast, here, Habitat's charitable work *is* the acquisition and development of land. As noted above, Habitat's primary charitable purpose is to acquire vacant lots and to build housing on those lots for sale to low-income families at below market prices. Habitat does not use buildings that it constructs to house its charitable operations. Instead, the land that Habitat acquires and the buildings that it constructs *are* Habitat's charitable works. Thus, unlike the hospital in *Emanuel Lutheran*, Habitat directly performs its charitable works when it acquires and develops

property. Once the development is completed, Habitat sells homes to individuals, who then pay property taxes on them. Said another way, Habitat does not acquire land as a preparatory step in completing a facility that it will use in the future for its charitable activities; when Habitat acquires and develops land it is presently using that land to conduct its charitable activities.

To a property developer, like Habitat, vacant lots are its stock in trade. It maintains a stock of vacant lots to be developed as resources become available. To continue the comparison with a hospital, Habitat uses vacant lots the same way that a hospital uses medications. A hospital makes present use of medications not only when its physicians or nurses administer them to specific patients, but also when the hospital acquires and maintains them as part of its inventory. Similarly, Habitat makes present use of its vacant lots not only when it sells homes to low-income families, but also when it acquires and maintains those lots, even if it cannot immediately begin construction on each of them.

Although each lot is assessed individually, the court determines exemption eligibility—that is, whether the property is being occupied or used to carry on a taxpayer's charitable works—by considering how each lot fits within the taxpayer's entire charitable enterprise. In *Multnomah School of Bible*, this court instructed that "'[t]he integrated activities [of an institution] as a whole must be examined.'" 218 Or at 30 (quoting *Serra Retreat v. Los Angeles Cty.*, 35 Cal 2d 755, 757, 221 P2d 59 (1950)). The charitable use of the staff residences in that case could only be established by looking at the role of those residences in the overall operations of the college.

When we correctly consider Habitat's integrated activities as a property developer, as well as its primary charitable purpose, it is apparent that the real property at issue was actually and exclusively "used in the literary, benevolent, charitable or scientific work carried on" by Habitat. ORS 307.130(2)(a). As a result, we hold that, at the time of the assessment, Habitat was entitled to receive the tax exemption that the county denied.

The Tax Court, therefore, erred by denying Habitat's motion for summary judgment and by granting the department's cross-motion for summary judgment.

The judgment of the Tax Court is reversed. The case is remanded to the Tax Court for further proceedings.