IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| NEW FRIENDS OF THE BEAVERTON CITY LIBRARY, | ) ) ) | |
| Plaintiff, | ) ) | TC-MD 160317G |
| v. | ) ) | |
| WASHINGTON COUNTY ASSESSOR, | ) ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

This case is about whether a charitable institution's operation of a bookstore is a use

qualifying for property tax exemption under ORS 307.166 and 307.130.[2]  Plaintiff appealed

Defendant's denial of its tax exemption application for property identified as Account R119277

(subject property) for the 2016–17 tax year.  Trial was held on March 23, 2017.  James T. Bartos,

Treasurer for Plaintiff, appeared and testified behalf of Plaintiff.  Eric Olson, Appraisal

Supervisor, appeared on behalf of Defendant.  Garrison Winkle-Bryan, Senior Appraiser,

testified for Defendant.

Plaintiff's Exhibits 1 to 15 were admitted without objection.  Defendant's Exhibits A to

F, H, I, and K to W were admitted without objection.  Defendant's Exhibits G and J were

admitted with objection.

## I.  STATEMENT OF FACTS

The parties agreed that Plaintiff was a charitable institution for the purposes of

ORS 307.130.  Plaintiff's mission statement, contained in its bylaws, set general goals: to

---

[1] This Final Decision incorporates without change the court's Decision, entered August 24, 2017.  Plaintiff timely filed a statement of costs and disbursements pursuant to Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1), requesting an award of costs for its $252 filing fee.  Defendant did not file an objection within the time permitted.  TCR–MD 16 C(2)(a).

[2] The court's references to the Oregon Revised Statutes are to 2015.

support the library, to expand and create appreciation for library services, and to promote library program development. (Ptf's Ex 6 at 1.) Plaintiff's bylaws further stated the specific means by which it would accomplish its mission: "by acquiring and selling books, as well as audio visual materials," and by "increasing Friends membership." (*Id.*) Upon dissolution, Plaintiff's assets were to become the property of the library. (*Id.* at 9.) Plaintiff had received exempt status under section 501(c)(3) of the Internal Revenue Code beginning in 1995. (Ptf's Ex 2.)

Plaintiff operated a used bookstore on the subject property, which was a single-family house located across the street from the library. Plaintiff leased the subject property from the City of Beaverton for a nominal consideration, and the parties agreed that Plaintiff's lease reflected savings below market rent resulting from tax exemption.[3] The books Plaintiff sold were donated by members of the public and by the library. Plaintiff used revenue from book sales primarily to fund items not in the library's budget, and secondarily to support activities consistent with its mission, such as a storytelling festival. Unsold books were donated to charities and to local schools. Plaintiff employed one or two paid managers and was otherwise staffed entirely by a few dozen volunteers.

Plaintiff, which had received a property tax exemption for the previous 15 years, filed a new claim for exemption because it had renewed its lease. Defendant denied that claim with the following explanation:

> "Your organization's use of the property does not qualify for property tax exemption under ORS 307.130. Base[d] on your organization's application, it appears that the subject property is primarily used for the generation of income/fundraising for a charitable institution. Per OAR 150-307.130-(A)(5)(a), 'There must be actual charitable use of the property rather than just a charitable

---

[3] Defendant stated that the lease met the requirements of ORS 307.112, a statute not applicable here because the city is not a "taxable owner." *See* ORS 307.090. Both ORS 307.112(1)(b) and ORS 307.166(1) require that the rent "reflect the savings below market rent resulting from the exemption from taxation."

use of the income derived from the operation of the property. "Destination of income" theory does not qualify the property for exemption.' "

(Compl at 4.) Plaintiff appealed to this court, requesting that the subject property be granted exemption from property tax and that its filing fee be awarded.

## II. ANALYSIS

The issue for determination in this case is whether the subject property qualified for tax exemption under ORS 307.130(2)(a) by being actually and exclusively used in the charitable work carried on by Plaintiff.[4]

An organization with the right to claim tax exemption for property it owns may also claim exemption for property it leases. If the owner of the leased property is a public body or another exempt organization, the lessee's right to claim exemption is found in ORS 307.166. *Cf*. ORS 307.112 (allowing exemption for lessees holding property from taxable owners). ORS 307.166(1) states that such property is exempt from taxation if the rent under the lease reflects the savings from the tax exemption and if the property is "used by the lessee or possessor in the manner, if any, required by law for the exemption of property owned or being purchased by the lessee or possessor."

Charitable institutions are among the organizations entitled to claim property tax exemption for their own property. ORS 307.130(2) states, in pertinent part:

> "Upon compliance with ORS 307.162 [regarding filing claims for exemption], the following property owned or being purchased by art museums, volunteer fire departments, or incorporated literary, benevolent, charitable and scientific institutions shall be exempt from taxation:

/ / /

---

[4] At trial, Plaintiff suggested another ground on which the subject property might qualify for tax exemption: that it was used for the corporate purposes of the City of Beaverton. *See* ORS 307.090. In support of that theory, Plaintiff cited *City of Cannon Beach v. Clatsop County Assessor*, TC–MD 060538E (Or Tax M Div Apr 26, 2007). Because the court finds in Plaintiff's favor on another ground, it does not address that argument.

"(a) Except as provided in ORS 748.414 [regarding funds of fraternal benefit societies], only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the literary, benevolent, charitable or scientific work carried on by such institutions."

Thus, the property of a charitable institution can qualify for tax exemption if the property is used in that institution's charitable work.[5]

Here, Defendant agrees that Plaintiff was a charitable institution under ORS 307.130 and that Plaintiff's lease reflected savings resulting from tax exemption. Defendant disputes whether Plaintiff used the subject property in a manner that would qualify Plaintiff's own property for tax exemption. *See* ORS 307.166.

The nature of the use that qualifies a property for tax exemption depends on "the primary purpose for which the institution was organized." *Mult. School of Bible v. Mult. Co.*, 218 Or, 19, 36, 343 P2d 893 (1959). Because charitable use depends on "the nature of the work that a taxpayer carries on and the relationship between that work and the property at issue," the same use may qualify one institution's property for exemption but not another's. *Compare Habitat for Humanity v. Dept. of Rev.*, 360 Or 257, 264, 381 P3d 809 (2016) (holding vacant lot was exempt use where institution's articles identified land acquisition and development among its purposes) *with Eman. Luth. Char. Bd. v. Dept. of Rev.*, 263 Or 287, 502 P2d 251 (1972) (holding vacant lot was not exempt use where hospital's charitable work was providing medical, research, and teaching services).

In determining what an incorporated institution's primary purposes are, courts look to its articles and bylaws as *prima facie* evidence. *Dove Lewis Mem. Emer. Vet. Clinic  v. Dept. of*

---

[5] The specific property tax exemptions in ORS 307.130 for retail stores are not applicable in this case because Plaintiff's bookstore is not operated by a rehabilitation facility and is not for the support of a welfare or housing program. *See* ORS 307.130(2)(c),(d),(e),(h).

*Rev.*, 301 Or 423, 427, 723 P2d 320 (1986); *see*, *e.g.*, *Habitat for Humanity*, 360 Or at 259, 266 (determining primary purpose from articles of incorporation).

In the present case, Plaintiff's bylaws specifically stated that Plaintiff carried out its charitable work "by acquiring and selling books[.]" That *prima facie* evidence of Plaintiff's activity was not disputed by Defendant and was supported by all the evidence received. The court finds that operating a used bookstore was a primary purpose of Plaintiff. While people or other organizations might "support and strengthen the library" and "create an appreciation of library services" in other ways, the characteristic way in which Plaintiff did so was by the operation of its bookstore. Likewise, Plaintiff "increas[ed] Friends membership" by recruiting volunteers to staff its bookstore.

Defendant argues that Plaintiff's operation of a bookstore cannot qualify for tax exemption except through an impermissible "destination of income" theory.[6] OAR 150-307-0120(5)(a) states:

> "There must be an actual charitable use of the property rather than just a charitable use of the income derived from the operation of the property. 'Destination of income' theory does not qualify the property for exemption. For example, use of property by a charitable organization as a bingo parlor to raise money for a charitable activity is not an actual charitable use of the property, and does not qualify the property for exemption."

The statement that "destination of income" theory does not qualify property for exemption means that noncharitable income-producing use of property is not made charitable by the donation of the income to charity. However, it remains possible that an income-producing use of property would itself be charitable.

---

[6] Although "destination of income" theory was developed with respect to exemption from federal income tax for nonprofit corporations, Oregon courts use the phrase with respect to exemptions from both property tax and corporation excise tax. *See Bd. Pub., Meth. Church v. Tax Com.*, 239 Or 65, 70 *et seq.*, 396 P2d 212 (1964) (describing origin of theory and relying on property tax exemption case in rejecting theory as applied to corporation excise tax exemption); *Corp. of Presiding Bishop v. Dept. of Rev.*, 276 Or 775, 778, 556 P2d 685 (1976) (relying on corporation excise tax exemption cases in rejecting theory as applied to property tax exemption).

As with charitable use in general, whether income-producing use of property qualifies for exemption will depend on the organizational structure and purpose of the charitable institution. Thus, property of a for-profit bookstore wholly owned by a nonprofit Bible school was not made tax-exempt by the fact that all profits were immediately given to the school. *Mult. School of Bible*, 218 Or at 42. Likewise, the proceeds of bookstores operated by a subsidiary for the benefit of an exempt parent were not exempt from corporation excise tax. *Bd. Pub., Meth. Church v. Tax Com.*, 239 Or at 74. However, the proceeds of a university bookstore were exempt because the store was operated "as an integral part of the University to further its 'educational purposes.' " *U. of O. Co-Oper. v. Dept. of Rev.*, 273 Or 539, 549, 542 P2d 900 (1975). Similarly, a hospital gift shop qualified for exemption because the shop itself—apart from the income it produced—supported the hospital's objective of caring for the sick and injured. *Mercy Medical Center, Inc. v. Dept. of Rev.*, 12 OTR 305, 308–10 (1992) (noting "cheers and smiles" brought by gift shop items aid in recovery of health).

Here, Plaintiff's bookstore was not merely a fundraising activity done to support some further charitable goal, as were the bookstores in *Multnomah School of the Bible* and *Board of Publication of Methodist Church*. Rather, "acquiring and selling books" was itself a primary purpose of Plaintiff—it was integral to the purpose of the charitable organization, just as the bookstore in *University of Oregon Co–Op* was integral to the charitable organization's purpose. One might propose reasons why Plaintiff's bookstore supported the library's mission apart from the income it generated—for instance, by increasing the circulation of books in the region while disposing of the library's surplus, or by building a volunteer community centered on support for the library and its services. However, it is not necessary to evaluate such reasons here because the parties agree that Plaintiff was a charitable institution. If Plaintiff was a charitable

institution, it had a charitable object—and running a bookstore was, in fact, Plaintiff's primary object. Even though running a bookstore might be done only as a means to generate income, in this case—as with land development in *Habitat for Humanity*—the bookstore was the characteristic way in which Plaintiff accomplished its charitable mission.

## III. CONCLUSION

Because Plaintiff was a charitable institution with a primary purpose of acquiring and selling books, its operation of a bookstore was a use qualifying the subject property for tax exemption under ORS 307.130 and ORS 307.166. Now, therefore,

IT IS THE DECISION OF THIS COURT that the property identified as Account R119277 is exempt from *ad valorem* taxation for the 2016–17 tax year.

IT IS FURTHER DECIDED that Defendant shall pay Plaintiff its costs of $252.

Dated this _____ day of September, 2017.

_____
POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Lundgren and entered on September 20, 2017.*