214 August 25, 2020 No. 12

IN THE OREGON TAX COURT
REGULAR DIVISION

MID-WILLAMETTE VALLEY
COMMUNITY ACTION AGENCY, INC.,
an Oregon nonprofit corporation,
*Plaintiff*,

*v.*

DEPARTMENT OF REVENUE,
*Defendant,*
*and*

MARION COUNTY ASSESSOR,
*Defendant-Intervenor.*

(TC 5358)

At issue is the time at which a taxpayer seeking property tax exemption must show "good and sufficient cause" in order to qualify for the "Second April 1 Deadline" under ORS 307.162(2)(a)(B). On cross-motions for summary judgment, Plaintiff (taxpayer) argued that it needed to show that "good and sufficient cause for failing to file a timely claim" exists at any time before the December 31 deadline in 307.162(2)(a)(A). The county assessor asserted that "good and sufficient cause" must have existed as of the applicable deadline in ORS 307.162(1)—either the April 1 deadline in the year prior to the tax year at issue, or 30 days after the date of acquisition of property. The court, after examining the text, context, and legislative history of the statute, determined that the requirement under the Second April 1 Deadline to show "good and sufficient cause" refers to circumstances existing on either the April 1 deadline in the preceding year or the alternate 30-day deadline, whichever is applicable to a taxpayer. The structure of the statute links the December 31 and Second April 1 Deadlines; each offers a filing period that is "late" in relation to the deadlines for "timely" filing under ORS 307.162(1).

Oral argument on cross-motions for summary judgment was held November 5, 2019, in the courtroom of the Oregon Tax Court, Salem.

Ben C. Fetherston, Jr., Fetherston Edmonds LLP, Salem, filed the motion and argued the cause for Plaintiff.

Scott A. Norris, Assistant Marion County Counsel, Salem, and Darren Weirnick, Senior Assistant Attorney General, Department of Justice, Salem, filed the motion and argued the cause for Defendant-Intervenor Marion County Assessor and Defendant Department of Revenue.

Decision for Defendants rendered August 25, 2020.

## ROBERT T. MANICKE, Judge.

### I.   INTRODUCTION

This property tax exemption appeal requires the court to determine the meaning of "failing to file a timely claim" for purposes of the exception for "good and sufficient cause" under ORS 307.162(2)(a)(B).[1]

### II.   FACTS AND LEGAL BACKGROUND

Plaintiff provides numerous established social welfare programs in the Willamette Valley. It is an Oregon nonprofit corporation and is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. It has previously secured from the Marion County Assessor's office (the Assessor) property tax exemptions for property on Center Street in Salem. On June 29, 2017, Plaintiff acquired additional real property on Commercial Street in Salem (the "Subject Property") for use in furthering its charitable purpose.

On January 3, 2018, Plaintiff submitted an application to the Assessor for exemption of the Subject Property for tax year 2017-18. On January 4, 2018, the Assessor denied the application. The parties stipulate that, had the Assessor received Plaintiff's application for exemption of the Subject Property on or before January 2, 2018, the Subject Property would have been entitled to exemption under ORS 307.130. Plaintiff does not claim that it had "good and sufficient cause," however that term is defined, for failing to file its application by July 31, 2017.

Plaintiff appealed to the Magistrate Division, which granted summary judgment in favor of the Assessor. As in the Magistrate Division, Plaintiff argues that it is entitled to exemption because (1) the relevant date as of which Plaintiff must have had "good and sufficient cause" for failing to file its application was January 2, 2018,[2] and (2) the uncontested facts show that Plaintiff had good and

---

[1] References to the Oregon Revised Statutes (ORS) are to the 2017 edition unless indicated otherwise.

[2] Plaintiff refers to the deadline of December 31 under ORS 307.162(2)(a)(A), which in 2017 fell on a Sunday and immediately preceded a holiday, and thus was extended to January 2, 2018, by operation of ORS 305.820(2).

sufficient cause as of that date. The Assessor, having intervened and filed the briefs in this division on behalf of itself and Defendant Department of Revenue (the department),[3] accepts this framing of the issues.[4] The Assessor argues, however, that (1) pursuant to ORS 307.162(1), the relevant date for a showing of good and sufficient cause was 30 days from Plaintiff's acquisition on June 29, 2017, and (2) in any event Plaintiff lacked good and sufficient cause even as of January 2, 2018. The parties have presented the case on cross-motions for summary judgment based on stipulated facts.

The court reprints the relevant portions of ORS 307.162, adding descriptive labels in boldface for the four deadlines discussed in this order:

"(1)(a)   Before any real or personal property may be exempted from taxation under ORS \*\*\* 307.130 \*\*\* for any tax year, the institution or organization entitled to claim the exemption must file a claim with the county assessor, on or before April 1 preceding the tax year for which the exemption is claimed **[('First April 1 Deadline')]**. The claim must contain statements, verified by the oath or affirmation of the president or other proper officer of the institution or organization, that:

"(A)   List all real property claimed to be exempt and show the purpose for which the real property is used; and

"(B)   Cite the statutes under which exemption for personal property is claimed.

"(b)   If the ownership of all property, other than property described in ORS 307.110(3)(h), included in the claim filed with the county assessor for a prior year remains unchanged, a new claim is not required.

"(c)   When the property designated in the claim for exemption is acquired after March 1 and before July 1, the claim for that year must be filed within 30 days from the date of acquisition of the property **[('30-Day Deadline')]**.

---

[3] On appeal to this division, the department was substituted as defendant by operation of ORS 305.501(5)(c).

[4] The parties specifically stipulate that the late fee required under ORS 307.162(2) is not in issue.

"(2)(a)   Notwithstanding subsection (1) of this section, a claim may be filed under this section for the current tax year:

"(A)   On or before December 31 of the tax year, if the claim is accompanied by a late filing fee of the greater of $200, or one-tenth of one percent of the real market value as of the most recent assessment date of the property to which the claim pertains **[('December 31 Deadline')]**.

"(B)   On or before April 1 of the tax year, if the claim is accompanied by a late filing fee of $200 and the claimant demonstrates good and sufficient cause for failing to file a timely claim, is a first-time filer or is a public entity described in ORS 307.090 **[('Second April 1 Deadline')]**."

Plaintiff applied pursuant to the Second April 1 Deadline under ORS 307.162(2)(a)(B).[5] Plaintiff does not argue that it was a "first-time filer" as defined in ORS 307.162(4)(a) or a public entity described in ORS 307.090; it seeks relief only on the grounds of "good and sufficient cause for failing to file a timely claim."

### III.   ISSUE

(1)   As of which deadline in ORS 307.162 must Plaintiff show good and sufficient cause for failing to file its application?

(2)   If the relevant deadline was the December 31 Deadline, did Plaintiff show good and sufficient cause?

### IV.   ANALYSIS

The parties urge different meanings of "failing to file a timely claim" under ORS 307.162(2)(a)(B). The Assessor focuses on the term "timely." In the Assessor's view, to be filed "timely," an application must be filed on or before one of the two alternative dates in subsection (1) of ORS 307.162—either the First April 1 Deadline or (in this case) the 30-Day Deadline, which was 30 days from the June 29, 2017, date of acquisition.[6] Therefore, because Plaintiff seeks to

---

[5] The "tax year" referred to in that provision began July 1, 2017, and ended June 30, 2018. *See* ORS 308.007(1)(c). Therefore, Plaintiff's January 3, 2018, filing was well in advance of the Second April 1 Deadline.

[6] The 30th day after Plaintiff's June 29, 2017, acquisition was July 29, 2017. Because that day was a Saturday, the application deadline under ORS 307.162 (1)(c) was July 31, 2017. *See* ORS 305.820(2).

demonstrate good and sufficient cause for "failing to file a *timely* claim" (emphasis added), the Assessor argues, any facts showing good and sufficient cause must have been true on July 31, 2017.

Plaintiff rejects this argument based on the structure of the relevant parts of the statute. Plaintiff argues that the statute sets forth a succession of alternative deadlines, each with its own distinct requirements, and that the Assessor's interpretation renders meaningless the differences between the deadline on which Plaintiff relies and the immediately preceding deadline.

The court analyzes the statutory text, context, and any relevant legislative history. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). In doing so, the court applies the rule in property tax exemption cases of "strict but reasonable" construction. *See Habitat for Humanity v. Dept. of Rev.*, 360 Or 257, 261 n 1, 381 P3d 809 (2016). The court begins with the text of ORS 307.162(2)(a)(B), enacted in 2009. *See* Or Laws 2009, ch 626, § 2a. The Second April 1 Deadline applies if the taxpayer pays a "late filing fee" of $200 and "demonstrates good and sufficient cause for failing to file a timely claim ***." The legislature has not defined "timely" for purposes of ORS 307.162, nor is the court aware of decisions of the Oregon Supreme Court or of this division of the Tax Court that analyze the meaning of the term as used here. The court thus examines the plain meaning of "timely" contemporaneous with the legislature's use of that term,[7] on the assumption that the legislature intended undefined terms to have their meaning in ordinary use. The court will next determine whether the term has a specialized, or "technical," meaning. If the court discovers a technical meaning that differs from the plain meaning, the court will examine usage in context to determine whether

---

[7] *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296 n 7, 337 P3d 768 (2014) (reviewing dictionary sources contemporaneous with the legislature's enactment of statutory term at issue). The court notes that, 10 years before enacting ORS 307.162(2)(a)(B), the 1999 legislature used the word "timely" in what is now ORS 307.162(4)(a), allowing exemption for additions or improvements notwithstanding the owner's failure to make a "timely" application for exemption for the additions or improvements. *See* Or Laws 1999, ch 398, § 9. The court has found no material difference in the relevant definitions as of 1999 and 2009, and the court thus cites below the dictionary editions available to the legislature in 2009.

the legislature intended to use the term in that different, technical sense. *See State v. McNally*, 361 Or 314, 321-22, 392 P3d 721 (2017) (examining plain and technical legal meanings of "passive resistance"; finding same meaning in both contexts); *DCBS v. Muliro*, 359 Or 736, 745-46, 380 P3d 270 (2016) (examining competing plain and technical legal meanings of phrase "receives * * * notice").

When the legislature enacted ORS 307.162(2)(b)(B), *Webster's Third New Int'l Dictionary* defined "timely" as "done or occurring at a suitable time"; "occurring at a normal or expected time"; "falling within a time prescribed by law or contract <the plaintiff filed a [timely] claim for refund * * *"; or "appropriate to the times or the occasion." *Webster's Third* at 2395 (unabridged ed 2002); *see also Webster's Encyclopedic Unabridged Dictionary of the English Language* 1985 (1996) (defining "timely" as "occurring at a suitable time; seasonable; opportune; well-timed: *a timely warning*" (italics in original)). The court concludes that the plain meaning of a "timely" claim or application for property tax exemption was one filed within "a time prescribed by law." The court has found no technical legal definition for "timely" from before 2009; however, the current legal definition is virtually identical to the plain meaning: "Within a specified deadline; in good time; seasonable." *Black's Law Dictionary* at 1786 (11th ed 2019). The court concludes that the dictionary definitions of "timely," by themselves, do not enable the court to decide readily among the multiple times set forth in ORS 307.162(1) and (2).

The same is true for the term "late." The plain meaning of "late" in 2009 was:

> "coming or doing after the due, usual, or proper time : not early <the train is [late]> <spring is very [late] this year> * * * of, relating to, or given or imposed because of tardiness * * * <had to pay a [late] penalty> * * * of or relating to an advanced stage in point of time or development * * * after the usual or proper time or the time appointed : after delay <came [late] to work> * * *."

*Webster's Third* at 1275 (2002); *Webster's Ninth New Collegiate Dictionary* 675 (1988) (same); *see also Webster's*

*Encyclopedic* at 1086 (1996) (substantially the same).[8] The legal definition was substantively identical: "Tardy; coming after an expected or appointed time <a late filing>." *Black's* at 887 (7th ed 1999). The court concludes that the plain meaning and the technical legal meaning of "late" refer to a filing after the deadline, but the definitions do not enable the court to select among multiple possible deadlines.

The court turns to the context in which the terms "timely" and "late" appear. Plaintiff's main argument is that subsections (1) and (2), taken together, contain a succession of independent filing deadlines. Without any fee, a taxpayer may apply on or before the First April 1 Deadline or the 30-Day Deadline, whichever is applicable. The December 31 Deadline requires a fee but otherwise allows the application "no questions asked," while the Second April 1 Deadline adds the requirement to show good and sufficient cause. Plaintiff argues that the circumstances constituting good and sufficient cause must have been present at the time of the immediately preceding December 31 Deadline because the December 31 Deadline otherwise would lack meaning.

The court agrees that the provision containing the December 31 Deadline is an important source of context, since it appears together with the Second April 1 Deadline in the same subsection (2). The introductory phrase of subsection (2) applies to both deadlines and commences with: "Notwithstanding subsection (1) of this section ***." This structure suggests that the legislature intended both of the deadlines in subsection (2) to be viewed as exceptions to the deadlines in subsection (1), as opposed to viewing the Second April 1 Deadline as an exception to the December 31 Deadline. Plaintiff essentially asks the court to read the Second April 1 Deadline as applying "notwithstanding subsection (2)(a)(A)." Nothing in the text supports such a reading.

Continuing with its text analysis, the court finds that the legislature also used a single phrase, "late filing fee," to

---

[8] The legislature first enacted the term "late filing fee" in 1987 in what is now ORS 307.162(2)(a)(A). *See* Or Laws 1987, ch 574, § 1. The dictionary definition of "late" at that time was identical to that in 2009. *See Webster's Third* at 1275 (1976).

describe the payment required under both the December 31 and Second April 1 Deadlines. Based on the context supplied by the introductory phrase "Notwithstanding subsection (1)," the court interprets the phrase "late filing fee" to mean that an application filed by the December 31 Deadline is already "late." If that application was "late," it was not "timely" under the dictionary definitions above. Accordingly, the statutory context suggests that the requirement under the Second April 1 Deadline to "demonstrate[] good and sufficient cause for failing to file a *timely* claim" (emphasis added) refers to either the First April 1 Deadline or the alternate 30-Day Deadline, whichever is applicable.

The legislative history includes statements confirming this interpretation, but the court finds no legislative history supporting Plaintiff's interpretation. The legislature enacted the December 31 Deadline in 1999, including both the introductory phrase "Notwithstanding subsection (1) of this section" and the requirement of a "late filing fee." *See* Or Laws 1999, ch 398, § 9. Ten years later, in 2009, the legislature enacted the Second April 1 Deadline. *See* Or Laws 2009, ch 626, § 2a (HB 2700). Although the parties have not presented any relevant comments of legislators themselves, the department's representative explaining the contents of HB 2700 to the Senate revenue committee stated: "What this bill does is just simply takes the *existing late filing period* and *extends it* from December 31 to April 1 if you meet one of those three criteria." Testimony, Public Hearing, Senate Committee on Finance and Revenue, HB 2700, May 13, 2009, at 21:45-22:00 (statement of John Phillips) (emphasis added). This testimony is consistent with the court's conclusion, based on the structure of the statute, that the December 31 and Second April 1 Deadlines are not independent of each other, as Plaintiff argues, but rather are linked together, each offering a filing period that is "late" in relation to the deadlines for applying "timely" under subsection (1).

## V.   CONCLUSION

The court concludes that the provision containing the Second April 1 Deadline required Plaintiff to make any showing of good and reasonable cause as of July 31, 2017,

rather than January 2, 2018. Plaintiff does not assert that it had good and sufficient cause for failing to file an exemption application by July 31, 2017. Accordingly, the court must deny Plaintiff's motion and grant that of the Assessor. There is no need to consider the facts relating to Plaintiff's argument that it had good and sufficient cause for failing to file within the December 31 Deadline. Now, therefore,

IT IS ORDERED that Plaintiff's motion for summary judgment is denied; and

IT IS FURTHER ORDERED that the Defendants' motion for summary judgment is granted.