IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| OBSIDIANS, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 250056R |
| | ) | |
| v. | ) | |
| | ) | |
| LANE COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appealed Defendant's denial for property tax exemption for property identified

as Account 0661700 (subject property) for the 2024-25 tax year.  The parties filed cross-motions

for summary judgment supported by exhibits.  The matter is ready for a decision.

## I.  STATEMENT OF FACTS

A.  *Background Information*

Plaintiff is a nonprofit corporation recognized by the State of Oregon and exempt from

federal income tax under Internal Revenue Code (IRC) section 501(c)(3).  (Def's Mot at 4.)

Plaintiff's bylaws identify seven organizational objectives:

1.  "[T]o educate members of the public about the physical, biological and
cultural features of the mountains, forests, waterways and trails of the Northwest
and more particularly, the country surrounding the upper Willamette Valley;

2.  "To aid and assist in the acquisition of physical, biological and cultural
information about the mountains, forests, waterways and trails of the Northwest;

3.  "To encourage members of the public to visit and explore the Northwest
mountains and forests, to experience and explore them in person;

4.  "To organize and conduct educational trips and expeditions for members of the
public into these area with those who are knowledgeable in geology, biology and
natural history to further the public's understanding and appreciation of the
Northwest mountains and forests;

5. "To educate members of the public about the importance of developing their physical and mental capacities and improve their physical and mental health by exploring these areas;

6. "To teach members of the public how to competently, safely and responsibly go hiking, backpacking, cross-country skiing, snowshoeing, kayaking, bicycling and mountain climbing in the beautiful Northwest mountains and forests; and

7. "To encourage the citizens of the Northwest to protect and preserve by all reasonable means the natural beauty of the mountains, forests, lakes, streams and other natural features of the Northwest."

(Ptf's Ex 5 at 4.) In its notice of denial of Plaintiff's property tax exemption, Defendant concluded that Plaintiff lacked charity as its primary object. (Ptf's Ex 7.)

B.    *The Subject Property*

The subject property consists of approximately 4.5 acres with a two-story, 3,416-square-foot lodge. (Def's Mot at 4.) The lodge includes a main hall seating about 90 people, with a projection and sound system, a small meeting room doubling as a library and art gallery, a boardroom, a kitchen, bathrooms, and storage rooms. (Ptf's Mot at 2-3.) The property also contains a 720-square-foot storage building. (Def's Mot at 2.) Equipment stored at the property includes climbing gear, adaptive equipment for individuals with disabilities, summer camp gear, and trail maintenance and construction tools. (Ptf's Mot at 5.)

C.    *Activities and Uses*

The lodge serves as Plaintiff's headquarters. In 2024, Plaintiff conducted educational activities on the subject property, including first aid, climbing, wilderness first aid, and crevasse rescue courses. All activities were free of charge except the climbing school, which required a nominal fee. (*Id*. at 3.) Plaintiff also hosted a National Outdoor Leadership School Wilderness First Aid course, which was $240 for members and $275 for nonmembers (Def's Mot at 8), and monthly potlucks with educational speakers open to the public at no cost. (Ptf's Mot at 3-4.)

Plaintiff has made the lodge available to the community, including a free neighborhood emergency preparedness meeting. (*Id*. at 4.) It also occasionally rents the lodge, usually at rates of $220 per day and $110 per half-day. (*Id.*) Renters in 2024 included the McKenzie River Trust, the Whole Earth Nature School, psychologist and mental health professionals, a housing nonprofit, the Coalition of Oregon Land Trusts, a singing group, and University of Oregon departments. (*Id.*; Def's Mot at 5.) The rentals to McKenzie River Trust and the Whole Earth Nature School were at reduced rates; all others were at Plaintiff's standard rates. (Def's Mot at 9.)

In addition, Plaintiff hosted annual community Mother's Day pancake breakfasts in 2023 and 2024, which provided free meals to members, neighbors, and other participants. (Ptf's Mot at 4.) Plaintiff also worked with the City of Eugene to transplant Meadow Checkermallow, an uncommon plant species, to the lodge grounds, and an Oregon State University graduate student studied the plants for her dissertation. (*Id*. at 5.)

D. *Events and Participation*

In 2024, Plaintiff organized approximately 41 to 43 events on the subject property, including eleven hikes, eleven board meetings, eleven game nights, six educational potlucks, and two to four classes. (*Id*. at 3; Def's Mot at 8.) Off-site, Plaintiff's members and volunteers led approximately 286 hikes and recreational activities and 33 trail-maintenance work parties, all free of charge. (Def's Mot at 7-8.) Plaintiff's newsletters list potlucks and presentations under the category of "entertainment." (*Id*. at 8.)

E. *Relative Use of the Property*

In 2024, approximately 9.87 percent of Plaintiff's total events occurred on the subject property, while 90.13 percent occurred elsewhere. (*Id*. at 9.) The lodge was rented to outside

groups thirteen times; 86.7 percent of rentals were at the full rate, and 13.3 percent were at reduced rates. (*Id*.)

## II. ANALYSIS

The issue in this case is whether the subject property is "actually and exclusively" used to support Plaintiff's charitable purposes, as required under Oregon Revised Statute (ORS) 307.130(2)(a).[1]

A.    *Summary Judgment Standard*

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Tax Court Rule-Magistrate Division (TCR-MD) 13; Tax Court Rule (TCR) 47 C. TCR 47 C states:

> "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

To satisfy the requirements for a charitable institution under ORS 307.130(2): "(1) the organization must have charity as its primary, if not sole, object; (2) the organization must be performing in a manner that furthers its charitable object; and (3) the organization's performance must involve a gift or giving." *Dept. of Rev. and Washington County Assessor v. The New Friends of The Beaverton City Library*, 23 OTR 512, 517 (2019) (citing *SW Oregon Pub. Def. Services v. Dept. of Rev.*, 312 Or 82, 89, 817 P2d 1292 (1991) (additional internal citations omitted).

In its motion for summary judgment, Defendant conceded, for the purpose of the motion, that Plaintiff is a charitable organization under ORS 307.130. (Def's Mot at 7.) Thus, this

---

[1] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to 2023.

decision only focuses on whether the subject property is actually and exclusively used in furtherance of Plaintiff's charitable purposes.

B.    *Property Tax Exemptions for Charitable Institutions*

Under Oregon law, "property owned or being purchased by * * * literary, benevolent, charitable and scientific institutions shall be exempt from taxation[.]" ORS 307.130(2).  That exemption extends only to property "that is actually and exclusively occupied or used" for its charitable purposes.  *Id*.  The term "exclusively" refers to the property's primary, not incidental, use.  *Multnomah School of the Bible v. Multnomah County*, 218 Or 19, 29, 343 P2d 893 (1959).  Oregon Administrative Rule (OAR) 150-307-0120(5)(d)(A)[2] explains that the property's use must "substantially contribute" to the charitable purposes of the institution.  In this state, taxability of a property is the default rule and exemption is the exception.  *Oregon Methodist Homes, Inc. v. Horn*, 226 Or 298, 307, 360 P2d 293 (1961).

C.    *Plaintiff's Use of the Subject Property*

Defendant advances two primary arguments that the subject property is not eligible for exemption.  First, Defendant contends that Plaintiff conducts most of its qualifying activities away from the subject property, rendering the property itself incidental or peripheral to Plaintiff's charitable work.  Defendant explains that "lopsided percentages of on-subject-property versus off-subject-property supports Defendant['s] position that the subject property is not *substantially* actually used or occupied for the benevolent and charitable work carried on by [Plaintiff]."  (Def's Mot at 9.) (Emphasis in original.)

Defendant's second contention is that even when activities occur on the subject property, many of them do not further Plaintiff's charitable purposes.  Plaintiff responds that the lodge

---

[2] References to the OARs are to 2024.

serves as the headquarters for its charitable endeavors, making them possible. Additionally, Plaintiff argues the statute does not require all activities to occur at the property, so long as the property itself is actually and exclusively used for charitable purposes.

The court begins its analysis with *Mercy Medical Center, Inc. v. Department of Revenue*, 12 OTR 305 (1992), in which this court explained that the question is "not what activity is being conducted, but how that activity relates to the charitable organization's purposes." *Id*. at 310. In that case, the court evaluated whether a hospital gift shop substantially contributed to the hospital's charitable purpose. The court concluded that even activities that are not central to the charitable mission may qualify if they are reasonably necessary and incidental to the accomplishment of that mission. *Id*.

The Oregon Supreme Court extended this reasoning in *Habitat for Humanity of the Mid-Willamette Valley v. Department of Revenue*, 360 Or 257, 381 P3d 809 (2016). There, the court considered whether undeveloped land held by a nonprofit organization to build affordable housing at a later time was entitled to an exemption. The court held that the statute requires a broad assessment of the relationship between the property and the charitable mission, emphasizing that even vacant land may qualify where acquisition and retention are reasonably necessary for the organization's chartable work. In that case, the court distinguished *Emanuel Lutheran Charity Bd. v. Department of Revenue*, 263 OR 287, 502 P2d 251 (1972), which denied an exemption for vacant land held for future expansion. In sum, the inquiry is not a mechanical tally of activities on or off the property, but a holistic examination of whether the property's use, viewed in context, advances the organization's charitable objectives. *See Habitat for Humanity*, 360 Or at 267.

/ / /

Applying those principles here, Defendant's focus on the number of on-site versus off-site events misconstrues the legal standard. Plaintiff's mission is to bring members of the public into the natural landscapes of the Northwest, to educate them about geology, biology, and outdoor leadership, and to promote health and stewardship through direct engagement with nature. It is inherent in such a mission that many charitable activities would occur off-site, in the very wilderness areas that Plaintiff seeks to highlight and protect. The fact that Plaintiff organizes more hikes and outdoor trips than indoor classes is not evidence against exemption; it reflects Plaintiff's charitable objectives.

The evidence shows that Plaintiff used the subject property as its headquarters and staging ground for its chartable work. The lodge hosted educational classes such as first aid, climbing, and wilderness safety, provided a meeting space for public lectures and potlucks, and served as a community gathering space for nonprofits and neighborhood groups. The property also stored climbing gear, adaptive equipment for individuals with disabilities, and trail maintenance tools. Each of those uses directly relates to Plaintiff's charitable purposes of education, outdoor leadership, stewardship, and public service.

The lodge also directly furthered Plaintiff's educational mission. The climbing school, wilderness first aid training, and monthly potlucks with presentations equipped participants with knowledge central to Plaintiff's purpose. Plaintiff's occasional rental of the property to other organizations does not detract from its charitable purposes if the rentals are incidental to the overarching mission. *See Mercy Medical Center*, 12 OTR at 310. The Oregon Supreme Court has allowed incidental rental activity where the primary use remains charitable. *See German Apostolic Christian Church v. Dept. of Rev.*, 279 Or 637, 569 P2d 596 (1977). The subject property was rented 13 times in 2024 by outside organizations. In contrast, the record shows the

varied and numerous ways the property was primarily used in furtherance of Plaintiff's charitable purpose. Because the rentals were incidental to the property's primary use, it is irrelevant whether the rates were market or not. In 2024-25, the subject property was actually and exclusively used to support Plaintiff's charitable purposes.

Although social gatherings such as game nights are not purely educational, they strengthen Plaintiff's community and volunteer base. In *Habitat for Humanity*, the court emphasized the need to assess the property's total contribution to the mission. Volunteer engagement is essential to Plaintiff's stewardship and education efforts, and the lodge provides the venue to build that community.

Finally, the lodge substantially supports off-site chartable work. Trail maintenance – the organization's most visible contribution – occurs away from the property. However, the lodge stores equipment, hosts planning and board meetings, and provides the organization infrastructure necessary to carry out that work. As in *Habitat for Humanity*, the subject property's role as a base of operations is sufficient even if the physical acts of charity occur elsewhere.

III. CONCLUSION

The evidence shows that the subject property was a hub of educational and organizational activity that is reasonably necessary to advance Plaintiff's charitable mission of connecting people to the outdoors and promoting environmental stewardship. Under the holistic framework articulated in *Habitat for Humanity*, the property's actual and exclusive use aligns with Plaintiff's charitable objectives. Accordingly, summary judgment is granted in Plaintiff's favor. Now, therefore,

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's Motion for Summary Judgment is granted.

IT IS FURTHER DECIDED that Defendant's Cross-Motion for Summary Judgment is denied.

RICHARD D. DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Richard D. Davis and entered on September 3, 2025.*